REUBEN R. THOMPSON, Appellant, *v.* WILLIAM MENCK, Respondent.

A judgment of reversal of the report of a referee will not be deemed to have been reversed on questions of *fact*, unless so stated in the judgment of reversal. (Code, § 268.)

This court will not send back a case to the court below, to amend its order by reversing the findings of fact, though it appear from the opinion of the court below that it was the *intention* to reverse those findings but the order of reversal fails to express that intent.

THIS is an appeal by the plaintiff from an order of the Supreme Court of the third district, reversing a judgment in his favor and ordering a new trial. The action was brought to recover a balance alleged to be due him from the defendant for the purchase price of a quantity of bones sold by the plaintiff to the defendant. The cause was tried by a referee, who reported in favor of the plaintiff and found the following facts:

In 1856, the defendant was a manufacturer of, and a dealer in, animal charcoal, in the city of New York. The plaintiff was at the same time a dealer in bones, and also in fine black or animal charcoal, in the city of Albany. In the latter part of March, 1856, while the river was closed with ice, the defendant called upon the plaintiff at Albany, and negotiated with him for the purchase of such bones and fine black as he might have on the opening of navigation, and agreed upon the price as follows, viz.: $13 per ton for refuse bones, $36 per ton for leg bones, $20 per ton for fine black, and twenty-five cents for packages. The plaintiff had ten or fifteen tons of bones then on hand at his factory, and was receiving about ten tons per week. The defendant saw the bones then on hand; they were free from coal ashes, iron, lime and clinkers. The goods were to be delivered at the plaintiff's dock in the city of Albany, to be paid for in cash on delivery. At the time of such purchase defendant informed plaintiff that Mr. C. N. Warner would ship the bones and fine black for defendant, and that plaintiff should deliver the bones, etc.,

to said Mr. Warner. That, subsequently, about the 16th day of April, 1856, the defendant wrote to the plaintiff a letter directing him to deliver the bones and fine black to C. N. Warner. That, a day or two before the delivery hereinafter mentioned, said Mr. Warner called at plaintiff's warehouse, and directed the foreman of the plaintiff to tell the plaintiff that Captain Casey would be up in a day or two, and that plantiff must put the bones and fine black on board Casey's barge. That Mr. Warner gave plaintiff, in person, the same directions. That, according to such directions of Mr. Warner, the plaintiff delivered on board the said barge, at his dock in the city of Albany, according to such directions: 50 tons and 1,380 pounds rough bones, 3 tons and 1,849 pounds shin bones, 66 barrels fine black—7 tons and 502 pounds, and 66 packages. That the same was correctly weighed, and delivered in good order, and free from coal ashes and clinkers. That said Mr. Warner was present during the delivery and weighing, off and on. That the said bones and fine black, and packages, at the prices agreed upon, amounted to $961.61. That it was no part of the bargain that the bones were to be reweighed at New York. That, after the bones and fine black were delivered, as aforesaid, the barge was sunk at New York with the bones and fine black on board. That, after such delivery, the defendant paid the plaintiff $900 on account of the bones and fine black so delivered. That a large quantity of the refuse bones was lost overboard, at the sinking of the barge, that was never recovered. That the defendant caused, some days after the sinking of the barge, the refuse bones to be weighed at New York, and that there were not as many recovered as were delivered. That defendant took the said bones and fine black from the barge. That while the said bones were being removed from the barge, they lay open and exposed on the pier and dock unwatched.

The referee's conclusions of law were :

That C. N. Warner was the authorized agent of the defendant to receive the goods which had been the subject of the bargain between plaintiff and defendant.

That the defendant's direction to put the goods aboard Warner's barge was complied with by the delivery of the same on board Casey's barge, according to the directions of Warner.

That upon the delivery of the goods on board Casey's barge, in pursuance of said directions, a valid contract of sale was consummated, upon the terms and at the prices previously agreed upon; and the property of the goods and possession of the same became thereby vested in the defendant.

That the goods, as soon as delivered on board of Casey's barge, were at the defendant's sole risk.

That the defendant became liable to pay the prices agreed upon as soon as the goods were delivered on board of Casey's barge.

That the defendant is not entitled to any deduction from such agreed prices by reason of the sinking of the barge, or of the injuries or loss to the goods which resulted therefrom.

That the plaintiff is entitled to recover of the defendant sixty-one dollars and sixty-one cents, with interest, from May 7th, 1856, besides costs.

*John H. Reynolds*, for the plaintiff.

*F. W. Burke*, for the defendant.

POTTER, J. It was not stated in the judgment or order of reversal of the General Term, that the judgment on the report of the referee was reversed on the questions of fact. Section 268 of the Code declares, "that it shall not be deemed to have been reversed on questions of *fact*, unless so stated in the judgment of reversal." This court cannot avoid this statute, how much soever they might be impressed with the injustice of the finding of the facts below. We have so distinctly held, twice, during this year, and have denied two motions for leave to send the case back that the

court below might amend their judgment or order, by reversing the findings of facts. The motions were made upon the ground that, from the opinion of the General Term, it was clear that the court intended to reverse the facts, but that the order of reversal did not so express that intent. *Crocker v. Crocker* was one case (the other case not remembered).

It is clear, beyond question, that, upon the facts found by the referee, the plaintiff is entitled to recover, if the delivery was to be made at Albany, and was so made, and the goods sold were to be paid for on delivery. This the referee has expressly found in his facts; and though, in looking at the evidence, we might wish he had found some of the facts otherwise than he did, and though the General Term, by an exercise of their power, might have reversed these findings of fact if contrary to their judgment, it is certain we cannot do so; we cannot repeal the statute in order to work out justice in that way.

The Supreme Court seem to have based their reversal upon the theory that the negotiation between the parties at Albany, in March or April, 1856, did not make a legal contract within the statute of frauds. I concur with them in that opinion. The referee has not found (as has been assumed) that it did. It is useless, therefore, to spend either time or argument upon that proposition, it is not a question in the case.

It cannot be denied, however, that there was a verbal negotiation and an agreement in March or April, at Albany, between the parties, in relation to the purchase and sale of these bones; that the parties agreed upon the price per ton, delivered on the dock at Albany; that there was an offer, and an acceptance; that the plaintiff made a pencil memorandum of it, on a card; and the defendant said, "all right," and that the defendant directed the delivery to Mr. Warner, whom he had hired to freight them down the river. True, this memorandum was not signed by the defendant; that no money was paid; that the river was then frozen, and no actual delivery, and no valid and binding bargain, was then made; but, on the 16th of April, the defendant wrote the

plaintiff in relation to this agreement, and adopting it in writing, in the words following :

"R. R. THOMPSON, Esq., Albany.

"DEAR SIR: I had a letter from Mr. Warner to-day, informing me that he would bring down the bones *which I bought of you*, at ten shillings per ton, and I wrote him to bring them. You will therefore please deliver them to him, as also the fine black, whatever you may have, and oblige,

"Yours truly,

"WILLIAM MENCK."

Here, at least, is the defendant's consummation, in writing, of the verbal contract made before in March or April. This was sufficient to make a good contract within the statute of frauds. At all events, if what before had transpired was not binding, here was a written proposition to be accepted by the plaintiff, the terms of which could be explained by the previous negotiation, and time was therein given the plaintiff for his acceptance, until Warner should be ready to take the delivery and transport the bones. And it was accepted ; and it cannot be questioned, as sound law, that if the plaintiff did accept this written proposition, which itself refers to the previous agreement and calls it a sale, for he adopts it, and says, "the bones *which I bought of you*," and if he did deliver the bones as directed in that letter, it was a good acceptance, and constituted a good contract, within the statute of frauds. This was expressly held in *Knight* v. *Dunlop* (1 Seld., 542), in a similar contract.

But I have a further remark in regard to the severe criticisms upon the finding of the referee. It is urged that he found the negotiation in March or April to be a valid sale. This is not just to the referee. He has not said so in terms, and it cannot be fairly implied from what he did say, nor would it be material as to the result of this action whether this agreement, if it was finally valid, was made so at the first negotiation or at the time of the delivery, on the 6th day of May. (*Knight* v. *Dunlop*, 1 Seld., 542). The referee first made a general

report, and then a separate finding of the facts. In his general report he says: "I find that the plaintiff sold, at the city of Albany, to the defendant, in the latter part of March or first of April, 1856, fifty tons of bones, etc., * * * * amounting to $961.61; that, on the 6th day of May, 1856, said goods were *delivered* to the defendant at plaintiff's dock in said city of Albany; * * that the plaintiff paid, on account of the said goods, *so sold and delivered,* $900," and, as conclusive that the referee did not even intend to hold, as is alleged, that the negotiation in March or April was a valid contract, he expressly says in his finding, "that, upon the *delivery* of the goods on board Casey's barge, in pursuance of said directions, *a valid contract of sale was consummated upon the terms and at the prices previously agreed upon.*" This is a perfect negation of the argument and charge, that the referee held the negotiation to constitute a valid agreement. All that is required in law to make a valid sale, is a proposition in writing by the party to be charged; an acceptance of the proposition according to its terms, by the party to whom it is made, within the time required, and a delivery of the property sold, in accordance with the terms of the contract. The minds of the parties have met in all the particulars of the proposition and acceptance of the written agreement, and the delivery has consummated it. It cannot legally be evaded. We can neither reverse these facts nor trifle with the necessary legal conclusions to be drawn from them.

Another point is urged that the delivery of the bones was not made to the defendant nor to his authorized agent. If *delivery* is a question of fact, we have no more right in this than upon the former question to enter into a controversy with the referee; that was the business of the court below. So far as *delivery* to some person is in question, it is a fact which we must assume, and cannot struggle with. Whether the delivery on board of Casey's boat, instead of Warner's, was a good delivery to Warner, and whether Warner was the authorized agent of the defendant to receive the goods, are partly questions of fact and partly of law. So far as they

are questions of law we may examine them.    But we cannot even examine the law, except by first examining the facts upon which the referee based his conclusion of a delivery to Warner, and his conclusion upon those facts must be our conclusion.    In the negotiation in March or April, defendant said, "he had spoken to Warner, and hired him to freight these bones down the river."    In his letter of the 16th April, to the plaintiff, he says, "I wrote to Warner to bring the bones; you will please deliver them to him."    Surely this is a sufficient appointment of Warner as agent, to receive the delivery, and the plaintiff had no need of looking further than to Warner for this purpose.    For the purpose of receiving the bones, Warner was the defendant; Warner's direction was the defendant's direction.

The plaintiff testified, "I delivered the bones on the dock at my place to Mr. Warner; I delivered them, as I understood it, according to my agreement with Mr. Menck; I delivered the bones to Capt. Casey according to the direction of Warner; Mr. Warner directed me to deliver these bones to Capt. Casey, as I understood it."    It is true that Warner denies that he had any authority to receive the delivery; but this the defendant's own letter contradicts, and he denies the delivery to him.    Here was a conflict.    The referee believed the plaintiff, and we have no right to say, here, though we might differ with the referee, that Warner rather than the plaintiff should have been believed.    Assuming that the plaintiff testified to the truth—as the referee assumed, and as we must—a delivery in fact and in law is then fully established.    If this be true, what occurred after the delivery, as to the manner of obtaining the money is immaterial; of which, a word hereafter.    The liability accrued at the delivery.    The cause of action was then perfect.

It is also urged that the referee erred in the admission of evidence to prove the agency, to wit, directions and conversations with Warner on the subject of the delivery of the bones.    The soundness of this objection, like those we have examined, depends upon our right to get up a controversy with the referee, in his findings, within his province.    Before

he admitted this evidence, it had been established beyond question that Warner had been authorized by the defendant to receive the delivery of the bones. The defendant says: " *You will therefore please deliver them to him.*" We shall not be expected to cite authority in this court to prove that the acts and declarations of an agent, done and made for the purpose, and within the scope of the particular employment for which he was appointed, can be given in evidence against his principal. Nor shall I occupy time in demonstrating that a satisfactory delivery to Warner, the agent, was a good and satisfactory delivery to the principal; that if Warner directed and was satisfied with a delivery on board of Casey's barge, instead of his own, that this was a good and satisfactory delivery to the defendant. If this be so, let us not depart from precedent and authority, for any conceptions of hardship or injustice in a particular case. I do not regard this objection as well taken, or as having any force.

Another objection taken by the court below (for I am meeting their objections as they seem to be repeated in the brief on the part of the defendant's counsel) is, that the referee erred in sustaining the objection to the question put to the plaintiff as a witness, to wit: " Did you deliver these bones to Captain Casey ?" The only objection raised was, that the question called for a legal opinion. The ruling was right in that view. If the defendant desired *only* the *fact,* which he was entitled to, he not only obtained that by his next question, but assented to the correctness of the ruling, and waived his exception as will be seen. " Did you not as a matter of *fact,* and not as a legal opinion, deliver these bones to Captain Casey ? " This was the same question as the former, stripped of the objection; and no objection was then made to it, so the defendant was not injured by the ruling on the former. He obtained a full answer to this question; he took no objection to the answer; he did not complain that it was not full and satisfactory; he did not ask to have any portion of it stricken out. He answered, " I delivered the bones to Captain Casey by the directions of Mr. Warner." Here was the fact without the law. What then is there in

this to complain of? How is the defendant injured by this ruling? Not at all, most clearly.

Another subject of objection, in the opinion of the Supreme Court, is, that the defendant's telegram was sent as a reply to a deceptive one to him, and it was therefore obtained by fraud. If this was true, it furnished a good reason for that court to have reversed the referee's findings, which they did not do, and which we cannot do. And, if we could review the evidence, we should see that the plaintiff had nothing to do with, and for aught that appears in evidence, was ignorant of any deception in that respect. I have thus far treated the points I have discussed irrespective of the evidence of the telegram of the defendant referred to. It was sufficient to take the defendant's own voluntary letter directing the delivery to Warner. Without the telegram, there is evidence enough to sustain the finding.

The most unreasonable objection, and one which has the least application of any to the merits of the question here, is the severe stricture upon the conduct of the plaintiff in his manner of obtaining the payment of the money from the defendant. If we were here settling a mere question of ethics, I should concur in this argument upon this point. The plaintiff's conduct and declarations, in misrepresenting and in concealing the knowledge of the sinking of the barge, is in no wise to be commended and cannot be justified in morals; but all *that* has no bearing upon the questions to be decided in this case; it had or might have had a strong influence upon the credit of the plaintiff as 'a witness. No moral misconduct of the plaintiff, however, after his rights had become fixed and perfect, could be carried back so as to change those rights. By the delivery of the goods to the defendant, the agreement was consummate, and the consideration had become a debt due. No bad faith after that could effect a change in that respect.

It was held in this court that moneys obtained upon false representations ought not to be recovered back, if the party who so obtained it had an equitable right to such moneys. (*State of Michigan* v. *The Phœnix Bank*, 33 N. Y., 1.)

In every view I have been able to take of this case, I think the order of the General Term ought to be reversed and the judgment on the report of the referee affirmed, with costs.

DENIO, Ch. J., DAVIES, BROWN and CAMPBELL, JJ., concurring, PORTER, J., not voting,

Judgment reversed.