John D. Wolf, Appellant, v. Wolf & Oakes, et al.

Statute of Limitations. Where one places property with another, to be applied in the payment of his debts, an action to recover a balance, alleged to have remained unexpended, is, no fraud appearing, barred in five years after plaintiff is informed that plaintiff claims to have expended all the property.

*Appeal from Johnson District Court.*—Hon. S. H. Fair-
ALL, Judge.

MONDAY, FEBRUARY 10, 1896.

ACTION in equity, for an accounting to recover any balance found to be due, and for general equitable relief. There was a hearing on the merits, and a decree for the defendants. The plaintiff appeals.— *Affirmed.*

*John W. Slater, Milton Remley, Remley & Ney,* and *Slater & Conklin* for appellant.

*George A. Ewing* and *S. H. Fairall* for appellees.

ROBINSON, J.—The defendants are Wolf & Oakes, a co-partnership, and Louis R. Wolf, and John Oakes, the partners who compose it. The petition alleges, that in the year 1881, the plaintiff was indebted in various sums, which aggregated not less than eight thousand, one hundred dollars. That the defendants became sureties for the plaintiff, on a promissory note, to the Johnson County Savings Bank, for the sum of four thousand dollars, a note to the Iowa County Bank (or Holbrook Bank) for one thousand, three hundred, and seventeen dollars, a second note to the Johnson County Savings Bank, amounting to seven hundred dollars, and a note, to John Hall, for

two thousand, seven hundred dollars; that, to secure the defendants for the liabilities they thus incurred, and for payments they should make, on account of the plaintiff, he caused to be turned over to the defendants, money and other property, and furnished pasturage for stock, to the amount of eleven thousand, three hundred and eleven dollars and one cent; that the defendants have paid on account of the plaintiff, sums of money, to about the amount of eight thousand, one hundred dollars, and owe him a balance of three thousand, two hundred and eleven dollars and one cent. The petition further alleges, that in September, 1882, the plaintiff suffered a stroke of paralysis, which rendered him unfit to attend to, or transact business; that, he had great confidence in the defendants, Louis R. Wolf being his brother; that he did not discover that the defendants had received the sum last stated, in excess of the amount they had paid for him, and that he had been defrauded, until the twentieth day of January, 1891. He asks that the defendants be compelled to answer the petition fully, and to account for the property received by them. The defendants admit that they received money and other property, from and on account of the plaintiff, but claim to have accounted for all of it, and to have paid for and in his behalf, one thousand dollars, in addition to the amount they have received; and for that they ask judgment. They further allege that they had a full and complete settlement with the plaintiff in October, 1885, and that the action on his part is barred by the statute of limitations. The district court dismissed the petition, at the cost of the plaintiff.

There are many errors in the printed record, which appear to be clerical, but are nevertheless confusing. They relate mainly to dates, amounts and designations of parties. We have endeavored to

separate them from matters in regard to which there is actual controversy, and think we have succeeded as to everything that is material.

The items with which the plaintiff charges the defendants, and which the latter admit, in substance, are as follows: September 3, 1881, cash, eight hundred and fifty dollars; December 26, 1881, cattle, four thousand, one hundred and eighty dollars and eleven cents; March 8, 1882, stock, two thousand and twenty-six dollars, and ninety-nine cents; November, 1882, proceeds of hogs, three hundred dollars; March 7, 1883, cattle, one thousand, one hundred and ten dollars, and eighty-four cents; February 20, 1885, proceeds of cattle, nine hundred and seventeen dollars, and eighty-seven cents; November, 1885, notes from cattle sale, nine hundred and twenty-six dollars. In addition, the defendants admit three hundred and fifty dollars of a charge of four hundred and seventy-five dollars for pasturing stock in the year 1882, one hundred and seventy-five dollars of a charge of three hundred and fifty dollars for sale notes, and one hundred and seventy dollars of a charge of one hundred and seventy-five dollars for hogs. They also claim credits to the amount of forty-five dollars on some of the charges which are admitted. In other words, the defendants are charged by the plaintiff with items to the amount of eleven thousand, three hundred and eleven dollars and eighty-one cents, of which they admit ten thousand, nine hundred and sixty-one dollars and eighty-one cents to be correct. The items charged by the defendants against the plaintiff, are as follows: June 21, 1881, cash loaned, four thousand dollars; July 9, 1881, cash paid Marengo Savings Bank, one thousand, three hundred and seventeen dollars and thirty-five cents; December 10, 1891, cash loaned, seven hundred dollars; January 1, 1883, cash paid N. B. Holbrook, or bank at Marengo, four hundred

and sixty-four dollars and twenty-six cents; January 3, 1882, cash paid John Hall on mortgage, two thousand, seven hundred and eighty-eight dollars and eighteen cents; cash paid Mrs. Wolf, sixty dollars; and cash paid on a note of son of plaintiff, one hundred and ten dollars. In regard to all of these items, excepting the first one and last two, it is enough to say that they are admitted, or clearly proven. We think the item of sixty dollars is shown to be correct, but that there is some doubt about the one for one hundred and ten dollars. The sums proven, exclusive of the item, "cash loaned, four thousand dollars," aggregate, five thousand, three hundred and twenty-nine dollars and seventy-nine cents. In addition, the defendants claim seven hundred and eighteen dollars and twenty-six cents, as commissions for shipping and selling stock for the plaintiff, and a considerable amount for interest. If the claims of the defendants be correct, the plaintiff owed them in November, 1885, after the notes from the cattle sale, to the amount of nine hundred and twenty-six dollars, were received, something more than two hundred dollars.

The chief contention between the parties is in regard to the cash item of four thousand dollars claimed by the defendants. It appears that on the twenty-first day of June, 1881, the plaintiff gave to the defendants, his note for four thousand dollars, payable on the first day of the next January. The defendants claim that this was for a loan of money to the amount of the note, made at that time, and paid directly to the plaintiff; while he insists that it was for payments on his account to be made thereafter to his creditors by the defendants, and that the payment of two thousand, seven hundred and eighty-eight dollars and eighteen cents to Hall, and one thousand, three hundred and seventeen dollars and thirty-five cents to the Marengo Savings Bank, were made on account of that

loan. It is admitted that the Hall claim was paid by means of a draft sent to Hall, by Thomas C. Carson, president of the Johnson County Savings Bank, at the request of the defendants. Carson's letter of transmittal is dated June 3, 1881, and it is finally conceded in the record that it was of that date. The draft itself is dated "Jan. 3, 1881." But no one claims that it was sent on that date, nor on the third day of June. It was marked, "Paid Jan. 10, 1882," and we are well satisfied that the other dates are due to clerical or typographical errors; that the draft, and letter transmitting it were dated "Jan. 3, 1881," by mistake; that they were in fact written and sent on the third day of January, 1882. We understand, from the testimony of the plaintiff, that the Hall note was not due for six months after his note for four thousand dollars was given to the defendants; and it appears to have been paid from the proceeds of cattle which are charged to the defendants under the date of December 26, 1881. At the time the plaintiff made his note for four thousand dollars he gave a mortgage on certain live stock and crops, to secure its payment. That mortgage was subject to another given to secure the Hall claim. The defendants contend that, when the mortgage to them was executed, they believed that the Hall mortgage was the only paramount lien on the mortgaged property, but that they afterwards ascertained that the Marengo Savings Bank held a mortgage to secure its claim, which was also senior to their mortgage, and that they were forced to pay the savings bank in order to protect their mortgage. The transactions of the parties to this action were substantially closed in the year 1885. In the latter part of October of that year there was a public sale of cattle owned by the plaintiff, at which sale notes were taken. The defendants claimed an interest in the property sold, and were present. The notes were delivered to John A.

Dougherty, a justice of the peace of the neighborhood, who had transacted some business for the plaintiff, with the understanding that the balance due the defendants should be ascertained by them, and sale notes sufficient to pay it should be delivered to them. They claimed to have ascertained that the balance due them was about nine hundred dollars, and notes for the amount claimed were delivered on their order early in November, 1885. When this was reported to the plaintiff, he stated to Dougherty that he had overpaid the defendants to the amount of nine hundred dollars, and sent Dougherty to them to investigate the accounts. He visited Louis R. Wolf, and, on comparing accounts, found that the plaintiff's statements did not contain any reference to the Marengo Savings Bank payment. Dougherty thereupon said that would more than balance the amount claimed by the plaintiff, and nothing further was done in the way of settlement, but the matter was reported to the plaintiff. He seemed to be surprised by the savings bank item, but did not deny it, and concluded that it was correct. We do not think that Dougherty was authorized to make a final settlement at that time, but the fact that the plaintiff, only claimed an overpayment of nine hundred dollars, before the savings bank credit in favor of the defendants was called to his attention, is most important, as corroborating the testimony of the defendants in regard to the loan of June, 1881, and the payments they have made for the plaintiff.

It is said that the plaintiff was mentally incapable of attending to his business after the latter part of the year 1882, when he became partially paralyzed, and that the documents relating to his business were kept from him. It appears that he was confined to his bed during the first year or two that he became affected by paralysis, and that he was quite feeble, and

had the assistance of others in attending to his business. But his mind does not appear to have been seriously affected, and in the year 1885, he gave personal attention to his business. The record does not show any ground for claiming that he was not fully capable of transacting his own business in the year 1885, and since. He knew in November, of that year, that defendants claimed to have paid him in full. It may be conceded that they were trustees of the property which came into their hands from the plaintiff, and for his benefit, but no fraud on their part is shown; and if there was, in fact, any property in their hands after November, 1885, for which they should have accounted to the plaintiff, he knew at that time that they, in effect, denied having such property, and that they denied being responsible to him for either money, or other property. The statute of limitations then commenced to run. But it is said, that a right of action in favor of the plaintiff, would not be barred for ten years after the denial by the defendants of further liability. This claim is founded on a provision in the mortgage given by the plaintiff to the defendants, in words as follows: "The money remaining after paying said sums, if any, to be paid on demand to the said party of the first part." This refers to money which should be received by the mortgagees on a foreclosure of the mortgage, but it does not appear that the mortgage was foreclosed, nor that they obtained anything by virtue of it for which there has not been an accounting. We are of the opinion that the plaintiff's alleged right of action is governed by sub-division 4, of section 2529 of the Code, and that it was barred at the end of five years from November, 1885, or before this action was commenced. We are better satisfied to reach this conclusion, because the plaintiff has failed to convince us that his theory in regard to the transaction of June

21, 1881, is well founded. He has argued the case as though the duty were on the defendants to show what he did with the money for which the four thousand dollar note was given, if it was paid to him as claimed, but that duty did not rest upon them. The law authorizes the presumption that they parted with a sufficient consideration for the note, when it was given to them, and the burden of showing that this was not true, was upon the plaintiff. His claims, in argument, in regard to his transactions with the defendants, are in conflict with the admissions of his petition, and are not sustained by a preponderance of the evidence. If there was anything due him after November, 1885, the amount was not large; and, although the conference between Dougherty and Louis R. Wolf did not amount to a formal settlement, it was treated as having that effect by all parties in interest, until about the time this action was commenced. The conclusions we reach, in effect, make it final, and the plaintiff has no just ground for complaining of it. The decree of the district court appears to be right, and it is AFFIRMED.