PHILIP DEOBOLD, as Executor, etc., Respondent, *v.* FREDERICK OPPERMANN, Jr., et al., Appellants.

The sureties upon an administrator's bond are his privies, and so are precluded from questioning any lawful order made by the surrogate in proceedings wherein the administrator is a party, if obtained without collusion between him and the next of kin or creditors of the estate.

A decree, therefore, of a surrogate setting aside, on the ground of fraud, a decree rendered on the final accounting of an administrator, which by its terms discharged the sureties, and ordering a further accounting, is binding on the sureties, although they were not served with notice of the application; and the omission to give notice is no defense to an action brought pursuant to an order of the surrogate directing the prosecution of the bond because of the failure of the administrator to pay over a sum directed, on a further accounting, to be paid by him to one of the next of kin.

Nor is it any defense that, pursuant to an agreement made with them at the time the sureties executed the bond, the administrator deposited with them the proceeds of the estate, to be retained until they were discharged from liability on the bond, and with the authority to use the proceeds in their business, they paying interest, and that upon the rendition of the decree discharging them they paid over the amount so deposited.

Such a contract is invalid and gives the sureties no right to retain funds received by virtue of it, and *it seems* an action could be maintained against them by the administrator to reclaim the funds, in case of refusal to pay them over.

A party cannot claim to have been defrauded who has been induced by artifice to do that which the law would have compelled.

The object of an administrator's bond is to relieve the next of kin from the necessity of resorting to the personal liability of a dishonest, negligent or absconding administrator, and so it is the duty of the sureties, not that of the next of kin, to pursue the administrator for money of the estate improperly retained by him.

When an administrator obtains by fraud a decree awarding the funds of the estate to him and canceling his bond, this, in itself, is a breach of the covenant of the bond that he will faithfully execute his trust, and renders the sureties liable; they cannot stand as innocent parties in relation to an act which they have covenanted shall never be performed.

The employment of the trust fund by an administrator or other trustee for his individual benefit, or as loans to persons engaged in and to be used in business, is illegal and constitutes a *devastavit*, and the funds may be reclaimed by the trustee or the beneficiaries of the trust from anyone receiving them with knowledge of their character.

A transferee from an executor or administrator cannot protect himself from an action brought by the trustee to reclaim the trust fund by showing that such trustee is a legatee under the will or next of kin to the intestate, and thus entitled to an interest in the fund.

An executor or administrator cannot bind the estate to any use of its funds by contract with third persons having knowledge of their character except in the ordinary and usual course of administration.

The next of kin of an intestate are entitled not only to the security afforded by the bond of the administrator, but also to that of the funds of the estate remaining in his hands, and it is unlawful for him to place those funds beyond the reach of the Surrogate's Court, and irreclaimable until after the duties of administration have been performed.

It is no defense, therefore, in an action against a third person to recover possession of such funds, that he holds them by virtue of a contract with the executor or administrator.

(Submitted October 19, 1888; decided December 11, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*Ashbel P. Fitch* for appellants. The plaintiff must show, to entitle him to a verdict in this action, that in a subsequent proceeding to which the defendants were parties, the liability of the defendants on the bond was restored. (*Browning* v. *Vanderhofer*, 4 Abb. N. C. 166.) Of two innocent parties, that one must suffer who puts it in the power of the third person to do the act which caused the injury. (*Greenleaf* v.

*Stanton,* 6 Week. Dig. 33; *Manufacturers and Traders' Bank* v. *Hazard,* 30 N. Y. 326.)

*George F. Langbein* for respondent. The arrangement or agreement between the sureties and the administratrix for indemnity was void as against public policy. (*Poultney* v. *Randall,* 9 Bosw. 234; *Wilder* v. *Butterfield,* 50 How. Pr. 386; Hill on Trustees, 266; *Higgins* v. *Healey,* 47 N. Y. Supr. Ct. [15 J. & S.] 209; *Seaman* v. *Duryea,* 11 N. Y. 330.) The sureties were not innocent third parties. (Theobald on Principal and Surety, 1; Hill on Trustees, 266; *Cushing* v. *Gore,* 15 Mass. 60; *Stewart* v. *Eden,* 2 Caines, 121; 14 Am. L. Rev. 839; *Jones* v. *Quinnipiak Bk.,* 29 Conn. 15; *Dudley* v. *Hawley,* 40 Barb. 397; *Hoffman* v. *Carson,* 22 Wend. 285; *Cobbs* v. *Dow,* 9 Barb. 230; *Ely* v. *Ehle,* 3 Comst. 506; 1 Smith's L. C. 488; *Stanley* v. *Gaylord,* 1 Cush. 550; *Platt* v. *Tuttle,* 23 Conn. 233; *Justice* v. *Mundell,* 14 B. Monroe, 12; *Spraights, Exr. of Dudley,* v. *Hawley,* 39 N. Y. 441; *Hunter* v. *H. R. I. & M. Co.,* 20 Barb. 493, 494; *Moore* v. *Payne,* 12 Wend. 123.) If the sureties had a right to have this estate in the manner in which they had it in their hands, it was their own negligence that they gave it back to the administratrix. (*Devoe* v. *Fanning,* 2 Johns. Ch. 251; *Gardner* v. *Ogden,* 22 N. Y. 327; *Linke* v. *Wilkinson,* 57 id. 445, 451–453; *Pringle* v. *Phillips,* 5 Sandf. 157; *Danforth* v. *Vandervoort,* 4 Duer, 101.) The sureties were never discharged from liability. (7 Wend. 435; 21 id. 270; *Gardner* v. *Barney,* 24 How. Pr. 467; *Van Gerhard* v. *Lighte,* 13 Abb. Pr. 101, 103; *Watt* v. *Reilly,* 62 How. Pr. 351; *In re Van Horn,* 7 Paige, 46; 1 Crary's Spec. Pro. 442; *Keily* v. *Dusenbury,* 42 N. Y. Supr. Ct. 238; *Westervelt* v. *Smith,* 2 Duer, 456, 457; *Thayer* v. *Clark,* 4 Abb. Ct. App. Dec. 391; 48 Barb. 243; *Schofield* v. *Churchill,* 72 N. Y. 566; *Douglass* v. *Howland,* 24 Wend. 35; *Jackson* v. *Griswold,* 4 Hill, 522; *Arnett* v. *Sherry,* 35 N. Y. 256, 260; *Baggett* v. *Boulger,* 2 Duer, 160; *Gerould* v. *Wilson,* 81 N. Y. 583; *W. N. Y. L. Ins. Co.* v. *Clinton,* 66 id. 331; *Louman* v.

*Yates*, 37 id. 604; *Gottberger* v. *Taylor*, 19 id. 150; *Gordon* v. *McCarthy*, 3 Whart. [Penn.] 407; *Coleman* v. *Bean*, 1 Abb. Ct. App. Dec. 374; *Lee* v. *Clark*, 1 Hill, 56, *Buel* v. *Gordon*, 6 Johns. 126; *Page* v. *Russel*, 2 M. & S. 551; *Welsh* v. *Welsh*, 4 id. 333; *Frost* v. *Carter*, 1 Johns. Cas. 73, 2 Caine's Cases in Error, 310; *Macdonald* v. *Bovington*, 4 T. R. 825; *Mayor* v. *Steward*, Burr. 24, 39; *Lucas* v. *Winton*, 2 Camp. 443; *Ballard* v. *Burgett*, 40 N. Y. 314; *Belloni* v. *Freeborn*, 63 id. 387.)

RUGER, Ch. J. This action was brought by the plaintiff as executor of the estate of his mother, Maria Deobold, to recover from the defendants as sureties upon the bond of Louisa Deobold, given upon her appointment as administratrix of the estate of her husband Henry Deobold, a sum of money ordered by the surrogate to be paid to Maria Deobold, as mother and next of kin to the intestate, but which the administratrix refused or neglected to pay. The trial court directed a verdict for the plaintiff, and the judgment entered thereon was affirmed upon appeal. The Supreme Court having granted leave to appeal to this court, the matter comes here for review.

The record presents the following facts, the evidence being practically undisputed. Prior to January 16, 1880, Henry Deobold, a resident of the city of New York, died possessed of personal property of the value of about $3,300 and leaving him surviving his widow, Louisa Deobold, his mother, Maria Deobold, and brother Philip Deobold, next of kin. On that day the surrogate of New York issued letters of administration upon the estate to the widow, Louisa Deobold, and the defendants became sureties upon her bond for the faithful performance of her duties as such. On December 9, 1882, upon a general accounting before the surrogate by the administratrix, he made a decree finally adjusting her accounts, and discharging the administratrix and her sureties from their bond.

This decree purported to have been based upon a written waiver of notice of the settlement of the estate, signed by Maria and Philip Deobold, and a written assignment by them to the

administratrix, of all their right, title and interest in the estate of the deceased.    Proceedings were thereafter begun by Maria and Philip in Surrogate's Court on January 9, 1883, to set aside the decree rendered on final accounting, upon the ground that it was fraudulently obtained, and that the assignment and waiver of citation were procured from them by the administratrix through fraud and misrepresentation.    Such proceedings were thereupon had that the surrogate, on February 20, 1883, made an order vacating, and in all respects setting aside the decree, and the defendants were immediately thereafter served with a copy of such order.    Subsequently, upon a further accounting, the surrogate made an order directing the administratrix to pay to Maria Deobold the sum of $200, and she refusing to pay the same, the surrogate made a further order directing the prosecution of the defendant's bond for the recovery of the amount so ordered to be paid.    This suit was brought in pursuance of the latter order.    It further appeared that before consenting to act as sureties upon the bond of Louisa Deobold, the defendants required her to deposit with them the entire proceeds of the estate, to be retained until they were discharged from liability upon the bond, and an agreement to that effect was made between her and the defendants.    No security was given to the administratrix for the repayment of these moneys by the defendants, and by the understanding of the parties they were to pay interest thereon, and were authorized to use them in their business as brewers.    Under this arrangement the administratrix, at the time of the execution of the bond, in January, 1880, deposited with the defendants the sum of $3,300, the funds of the estate, which they employed in their business until January 16, 1883, when it was repaid by them, together with a loan of $2,900 and interest, to Louisa Deobold.    This payment was made by the defendants after an examination of the decree of the surrogate of December 9, 1882, discharging them from liability on the bond, and after an inspection of the papers upon which such decree was founded.    It did not appear that the defendants had actual notice of the proceedings previously

instituted by Philip and Maria Deobold to set aside such decree for fraud, or that they were made parties thereto.

It further appeared that, in actions instituted on behalf of Philip and Maria Deobold against the administratrix in the Court of Common Pleas of New York, judgments had been obtained by the plaintiffs, respectively, vacating and setting aside the assignments before referred to, as fraudulent and void.

Two questions are presented by the appellants as grounds for the reversal of the judgment below, which may be briefly stated as follows :

*First.* That the surrogate could not reinstate the defendants in their liability as sureties upon their bond, in proceedings to which they were not parties ; and,

*Second.* That the agreement by which they were made the custodians of the funds of the estate was binding and lawful and authorized them to retain them until after the discharge of such bond.

As the corollary of the latter proposition, it is urged that having the right to retain them and having paid them out, relying upon the assignment and decree of the surrogate based thereon, the defendants were relieved from the obligation of repaying the same moneys to the plaintiff in this action. We are of the opinion that the claims of the defendants are not maintainable. No question is made but that the surrogate had ample power to set aside his decree for fraud, and require a further accounting by the administratrix as to the estate (Laws of 1870, § 1, chap. 359); but the claim is that the sureties were not bound by the subsequent adjudications of the surrogate, for the reason that they did not have notice of the proceeding.

This claim is clearly untenable. The decree discharging the administratrix and her sureties was, when made, assailable by any party thereby aggrieved, either by motion to set it aside, or by proceedings on appeal. In neither case was it necessary that the sureties should have notice of the proceeding. The sureties are the privies of the administratrix, and

are precluded from questioning any lawful order made by the surrogate in a proceeding wherein she is a party, if obtained without collusion between such administratrix and the next of kin or creditors of the estate. (*Scofield* v. *Churchill*, 72 N. Y. 565 ; *Gerould* v. *Wilson*, 81 id. 583.)

Their bond contemplates that they shall remain sureties as long as the surrogate retains jurisdiction of the proceedings in administration of the estate, and has power to make valid orders therein affecting the property administered upon.

Of course, the sureties would not be bound by an order which the surrogate had no jurisdiction to make ; but so long as his jurisdiction continues the liability of the sureties remains. The very language of the bond provides for orders made in proceedings *inter alios*, and for the liability of the sureties for a non-performance by the administratrix of any decree or order made by the Surrogate's Court. The condition of the bond is that liability shall follow her infidelity to her trust, or disobedience of any lawful order or decree whenever made in the proceedings.

It was, we think, never heard of in practice that sureties on an administrator's bond, should have notice of proceedings in the administration of an intestate's estate.

It could not be claimed that these sureties were entitled to notice of an appeal from the surrogate's decree, or that if an appeal was taken from a decree in favor of an administrator and the decree should be reversed, they would not still remain liable upon their bond. Such bonds are similar to those given in civil actions upon appeals and otherwise, and have always been held to abide the result of the action.

The real question, therefore, is as to the legality of the arrangement made with the defendants in respect to the custody and use of the funds of the estate during the pendency of proceedings in administration, and the effect of the repayment of such moneys by the defendants to the administratrix under the circumstances disclosed in the case. We are of the opinion that any employment of trust funds for

the individual benefit of a trustee, is forbidden by the rules of equity, and constitutes a *devastavit* authorizing the removal of the trustee, and the reclamation of such funds from any-one receiving them with knowledge of their character. The employment and use of such moneys by executors, admin-istrators and other trustees during the continuance of the trust, has been from the earliest times the subject of frequent consideration by the courts, and their decisions have dis-played a uniform tendency towards that mode of use, which should afford the greatest security to the fund. Their employment by the trustees in trade, or as loans to persons engaged in such business, or in the prosecution of mercantile, commercial and manufacturing enterprises or speculative adventures, has been uniformly condemned as illegal and as constituting a *devastavit* of the estate. ( *Wilmerding* v. *McKesson*, 103 N. Y. 336 ; *King* v. *Talbot*, 40 id. 90 ; *Fellows* v. *Longyor*, 91 id. 324 ; *Wetmore* v. *Porter*, 92 id. 76.)

So, too, it is the uniform doctrine of the cases, that trust funds so invested by the trustees in the hands of third persons, having knowledge of their trust character, still remain impressed with the obligation of the trust in the hands of the holder, and are subject to be reclaimed by suit in the name of their trustees, or in that of the beneficiaries of the trust, and restored to the trust fund. ( *Wilmerding* v. *McKesson, supra; Wetmore* v. *Porter, supra ; Rogers* v. *Squires*, 98 N. Y. 50 ; *Clark* v. *Hougham*, 2 B. & C. 149 ; Perry on Trusts, §§ 828–832 ; Williams on Executors, 801 ; *Field* v. *Schieffelin*, 7 Johns. Ch. 150.)

Neither can the transferee of such funds, from an executor or trustee, protect himself from an action brought by the trustee to reclaim them, by showing that such trustee was a legatee under the will or next of kin to the intestate, and thus entitled to an interest in the fund. (Perry on Trusts, § 811.) Such interest can become a legal right, in any part of such fund, only after administration has been had, and the decree of the court has provided for division and distribution accord-ing to the rules regulating such proceedings.

We conceive it to be beyond the power of an executor or administrator to bind the estate they represent, to any use of its funds, by contract with third persons having knowledge of the character· of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its objects. The bond in question was executed for the sole purpose of securing the persons interested in the property, the administratrix was about to receive, from any loss which they might sustain through her misconduct or dishonesty, and the defendants were well aware of the character of the transaction. The defendants thereby contracted to become sureties for the faithful performance by her of her duties as such administratrix, and the beneficiaries of the estate thereupon became, under the theory of. the law, entitled not only to the security afforded by the bond, but also to that of the funds of the estate remaining in the hands of the administratrix. If this transaction is sanctioned, one of the securities that the law provides to such persons is entirely destroyed, and the funds of the estate are merged in the personal responsibility of the sureties alone, subject to the hazard and casualties which so often attend persons engaged in trade. Estates, in the hands of administrators, are .always supposed to be under the immediate control of the Surrogate's Court, and subject from day to day to such orders as it may make in relation thereto. It would be contrary to the policy of the law to allow an administrator, at the outset of his administration, by contract, to place the funds of the estate beyond the reach of the court, and irreclaimable until after all the duties of administration have been performed by the administrator. It would certainly be no excuse to an administrator for disobedience to an order of the surrogate, as to the disposition of any portion of the estate, to allege that it was impossible for him to obey, because he had placed its funds out of his possession. Neither would it be any defense to a third person, in an action by any one having authority to recover possession of such funds, to plead that he held them by virtue of a contract, with a former trustee, entered into with him as such trustee.

We think this proposition was decided in *Poultney* v. *Randall* (9 Bosw. 236). There the general guardian of an infant sued the defendant for moneys collected by such defendant, belonging to the estate of the infant, under a power of attorney from the guardian. The defense set up was that he held the money, by virtue of a contract with the guardian to so hold it, as security for his obligation upon the guardian's bond, and that the guardian was insolvent. The court held that the facts pleaded constituted no defense, and that the contract was void upon considerations of public policy and a fraud upon the statute requiring security for the due performance by the guardian of his duties as such.

We can see no material distinction between that case and the case at bar, and approve of the reasons therein alleged for the decision. The case of *Wilder* v. *Butterfield* (50 How. Pr. 385) is to a similar effect.

But it is claimed that the surrender, after the decree canceling the administratrix's bond, of the funds of the estate held by the defendants, to the administratrix operates as a defense to this action. The principle upon which the appellants make this point is not very clearly presented in their brief, and we are unable to see the exact theory upon which it is based. They do not claim that the plaintiff is estopped from alleging the invalidity of the assignment or of the decree, upon the faith of which the payment was made. They claim, however, that "of two innocent parties, that one must suffer who puts it in the power of the third person to do the act which caused the injury."

This contention is probably based upon the familiar maxim that "when one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one, if either, whose act has enabled such fraud to be committed." (Abbott's Digest, vol. 8, maxim 84, and vol. 4, maxim 382.) This maxim has been applied and illustrated in numerous cases in this state, among which are the following: *Spraights* v. *Hawley* (39 N. Y. 441) ; *Moore* v. *Metropolitan Bank* (55 id. 41) ; *Griswold* v. *Haven* (25 id. 595) ; *Exchange Bank* v.

*Monteath* (26 id. 505); *Sandford* v. *Handy* (23 Wend. 268); *Root* v. *French* (13 id. 572); *Voorhis* v. *Olmstead* (66 N.Y. 116).

These cases generally relate to the authority of agents whose right to deal with the property of their principals was in dispute, and the maxim has been applied by reason of various peculiar circumstances, which were deemed sufficient to preclude the principal from availing himself of the agent's want of actual authority; but the general principle involved has been applied in many cases where a loss has followed from the negligence of one party which enabled a fraud to be committed upon another. We are of the opinion that the maxim has no application to the case in hand, for the reason that no actionable fraud has been shown to have been committed upon the defendants in this transaction, nor has any loss occurred to them, in consequence of the surrender of the money referred to. It is probably true that the defendants would not have surrendered to the administratrix the funds of the estate in their possession, or have repaid to her the debt which they owed her, except for the decree produced for their inspection; but it is also very clear that they had no right to retain such funds by virtue of their contract with the administratrix, and there was no intention to commit a fraud upon them by the administratrix, in obtaining possession of property to which she was legally entitled. She was entitled to the repayment of her loan as a matter of course, for she held a promissory note therefor, payable on demand, and no possible defense could be made to its collection. Neither, as we have seen, could they have resisted a claim made by her, or others, for the reclamation of the money of the estate.

They have done nothing, therefore, in consequence of the decree except what they were under legal obligation to do, and have, therefore, suffered no legal loss or injury from the transaction. The surrender of the property in question would not even have furnished a good consideration for a promise made by the administratrix. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392.) It is of the very essence of an action of fraud

or deceit, that the same should be accompanied by damage, and neither *damnum absque injuria*, or *injuria absque damnum*, by themselves constitute a good cause of action. (*Hutchins* v. *Hutchins*, 7 Hill, 104; *Michigan* v. *Phœnix Bk.*, 33 N. Y. 9.) Neither can a party claim to have been defrauded who has been induced by artifice to do that which the law would have otherwise compelled him to perform. (*Thompson* v. *Menck*, 2 Keyes, 82; *Story* v. *Conger*, 36 N. Y. 673; *Randall* v. *Hazeltine*, 12 Allen, 412.)

The defendants may possibly lose the money which they pay in satisfaction of their bond, but this will result from their contract, and the confidence reposed by them in their principal, and not at all from the surrender of the property held by them. It is not probable, however, that they will lose anything as, for all that appears, their principal is perfectly responsible, and liable to indemnify them for any sums they may be obliged to pay on her account.

It affirmatively appears that in January, 1883, she not only had in her possession all the funds of the estate, but also the additional sum of upwards of $3,000, the result of her own savings during the preceding two or three years, and being an amount largely exceeding the liability of the defendants on their bond.

The main question in the case really seems to be who shall pursue the administratrix for the moneys of the estate improperly retained by her. We think it is the duty of the defendants, as the object of their bond was to relieve the next of kin from the necessity of resorting to the personal liability of a dishonest, negligent or absconding administrator. We are further of the opinion that the defendants are precluded from the benefit of the principle contained in the maxim by reason of the obligations of their bond. They are the privies of their principal and the guarantors of their fidelity in the administration of her trust.

The decree under which the defendants claim discharge from liability was procured by fraud, practiced upon the surrogate, through the presentation of papers fraudulently

obtained and used by her.   It was against the perpetration of such frauds that the defendants' bond was intended to protect the beneficiaries of the estate.   The defendants had covenanted that the administratrix should faithfully execute the trust reposed in her, and obey all lawful decrees and orders of the Surrogate's Court.   When she obtained, through fraud, the order of the surrogate awarding the moneys of the estate to her, and canceling her bond, she violated the obligations of her trust, and the defendants became liable for the damages flowing from such breach of duty.   That the defendants were deceived by the administratrix constituted no protection to them, for they had guaranteed that she should deceive nobody in the administration of her trust.   The liability of the sureties is co-extensive with that of the administratrix, and embraces the peformance of every duty she is called upon to discharge in the course of administration.

It is quite absurd to say that the very fact which creates a cause of action against the sureties, should also operate as a defense to them.   They cannot stand as innocent parties in relation to an act which they have covenanted to the plaintiff, and all others interested, should never be performed.   And they have sustained no legal loss when subjected to a liability which they agreed to assume in the event, which is now alleged as the cause of their misfortune.

We are, therefore, of the opinion that the judgments below should be affirmed, with costs.

All concur, except EARL and PECKHAM, JJ., dissenting.

Judgment affirmed.