JACKSON G. TUCKER, Appellant, v. WILLIAM G. STEWART, W. H. WAPLES, T. G. CRAGIN, B. W. LACY, and WILLIAM G. STEWART, JR., as Executor of the Will of ROBERT W. STEWART, Deceased, Appellees.

BIRDENA TUCKER BRIGGS, Appellant, v. SAME DEFENDANTS, Appellees.

OLIVE TUCKER, Appellant, v. SAME DEFENDANTS, Appellees.

**Administrators:** ACTION UPON BOND: JUDGMENT: CONCLUSIVENESS. 1 In an action on the bond of an executor for failure to make a payment as directed by a judgment setting aside the approval of his final report, the court will not investigate the justice of the claim on which the judgment was based, in the absence of a plea of fraud or collusion in obtaining the judgment.

**Same:** LACHES: ESTOPPEL. The approval of an administrator's final 2 report and his discharge stands as a complete adjudication of his account until the same is set aside by a direct attack in equity; as the correctness of the account can not be inquired into in a collateral proceeding. But when the approval of the report has been thus set aside, and the administrator has failed to make restitution of money represented by an alleged fraudulent credit in his account, as directed by the court, an action therefor will lie against him and the sureties on his bond, when prosecuted promptly and in good faith. In the instant case laches as a ground of estoppel is not shown.

**Same.** Laches though sometimes available as a defense in equity 3 have no place in an ordinary action for the recovery of a debt, unless prolonged for the full period of the statute of limitations.

**Action upon executor's bond:** LIMITATIONS. An executor's bond 4 creates a continuing liability, each violation of which is a breach and furnishes a cause of action. So that while upon the approval of an administrator's final report an equitable cause of action

may arise for the purpose of having the approval vacated on the ground of fraud in the account, which in the case of minor heirs or legatees, as in this case, will continue during minority and one year thereafter; so too upon a judgment in such an action vacating the approval of the report and disallowing an item in the account credited to the executor, with direction that he account for the same in money, an ordinary action then, and not until then, accrues in favor of such heirs or legatees against the executor and the sureties on his bond upon his failure to so account, and the statute of limitations does not commence to run against the latter action until that time.

**Vacation of executor's final report:** PARTIES: NOTICE. The sureties on an executor's bond are not necessary parties to an equitable action to set aside the approval of his final report on the ground of fraud in his account; and an order vacating the same without notice of the action in no manner affects their liability, since they are in privity with their principal and are presumed to have knowledge of all orders regularly entered relative to the settlement of the estate.

**Executors:** FRAUD: LIABILITY OF SURETIES. An executor's bond is given to secure an honest and correct final accounting, and the approval of an account tainted with fraud or serious mistake, though operating for the time to prevent action on the bond, does not discharge all liability thereon; and when the report has been vacated for fraud liability of the sureties on the bond for the honest discharge of the trust by the executor is revived.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

WEDNESDAY, MAY 4, 1910.

ACTIONS at law upon an administrator's bond. Judgment for defendants in each case, and the plaintiffs in each case appeal. The several actions depend upon substantially the same state of facts, and the appeals will be disposed of in a single opinion. The nature of the controversy will be more fully set forth in the opinion of the court.— *Reversed.*

*Hurd, Lenehan & Kiesel,* for appellants.

*Glenn Brown,* for appellee B. W. Lacy.

*Kenline &Roedell,* for the other appellees.

WEAVER, J.—The issue to be considered upon these appeals can be best explained by a chronological statement of the material facts. On February 16, 1885, John H. Floyd of Dubuque, Iowa, died testate. Among the legatees named in his will were Jackson G. Tucker, Birdena Tucker, and Olive Tucker, all of whom were minors. Soon thereafter L. E. Tucker was appointed guardian of the estate of said infant legatees, and as such became entitled to receive and hold for their use all the property and moneys coming to them under or by virtue of said will. William G. Stewart was appointed administrator with will annexed of the estate of said John H. Floyd, and qualified by giving the bond upon which plaintiffs seek to recover in these actions. Said bond was executed by himself, as principal, and by M. H. Waples, Robert W. Stewart, T. G. Cragin, and B. W. Lacy, as sureties, and was duly approved June 27, 1885. On February 5, 1890, Stewart, claiming to have fully administered upon said estate, made and filed a written final report, of which he asked the approval of the court. In this accounting he claimed and took credit for an item of $6,000 which he alleged had been paid by him to the guardian of said Jackson G. Tucker, Birdena Tucker, and Olive Tucker on January 2, 1890. Notice of said final report was served upon said wards, all of whom were still minors, and upon their mother with whom they resided. No appearance was made by or in behalf of said wards to contest said report or account. It was examined by a referee appointed for that purpose who recommended its approval, and thereupon the court made an entry in the usual form approving the report, and, upon showing being made that the balance thus found against the adminis-

trator had been duly distributed, an order was entered under date of April 11, 1890, discharging said Stewart as administrator, and exonerating the bond given by him in that capacity. In the year 1896 and within one year after arriving at his majority, Jackson G. Tucker, in his own behalf and in behalf of his sisters, Birdena Tucker and Olive Tucker, who were still minors, instituted a proceeding in said district court to set aside the order approving the final report and reopen the account of said administrator, stating as ground of such demand, that the alleged payment of $6,000 to the guardian of the plaintiffs under date of January 2, 1890, had never been made, and that the item of credit allowed therefor was false or mistaken. The sureties upon the administrator's bond were not made parties, and did not appear in this proceeding. The district court denied the relief prayed, and dismissed the bill. On appeal to this court it was decided that plaintiffs were entitled to the relief demanded, and to have the approval of said report vacated and set aside, and said account reopened for the purpose of charging the administrator with the sum for which he had wrongfully taken credit. The decree of the trial court was therefore reversed, and cause remanded for further proceedings in harmony with the opinion expressed in handing down said decision. *Tucker v. Stewart,* 121 Iowa, 714.

The opinion upon said appeal was filed October 31, 1903, and thereafter on April 8, 1904, the district court, upon application of the plaintiff, entered an order setting aside the approval of the final report so far as it related to said item of $6,000, and directing the administrator to make settlement and accounting therefor to said wards, all of whom had then arrived at their majority, and were competent to make settlement with him in their own right. The administrator having failed to comply with said order and failing to pay over or account for the moneys so retained by him, separate actions at law to recover the

same were begun by the said Jackson G. Tucker, Olive Tucker, and Birdena Tucker, now Birdena Tucker Briggs. These actions were instituted in November, 1904, and by order of court were consolidated for the purpose of trial. Answering the plaintiff's demand, the defendants pleaded (1) that plaintiffs' right of action upon the administrator's bond is barred by the statute of limitations; (2) that the sureties upon said bond were not made parties to the proceedings for the reopening of the administrator's account and the adjudication therein is not binding upon them; that the final report and accounting made by Stewart on February 5, 1890, was fair and regular upon its face, and was duly and regularly approved by a court having jurisdiction of the proceedings and of the parties interested therein; that said sureties had no knowledge or notice that said credit of $6,000 was not in all respects proper and just, and they relied and rested upon such settlement and order of discharge as a release of all liability on their part until they were made defendants in these proceedings nearly fifteen years after the entry of said order; and that during all said time neither plaintiffs nor any one for them ever gave said sureties notice of any claim against them on account of their suretyship—wherefore it is contended that plaintiffs are now estopped to maintain an action thereon. They also pleaded as a partial defense that interest upon the item of $6,000 was paid by Stewart to the guardian of the plaintiffs for the years 1890 to 1894, inclusive. The plaintiffs base their claim and right of action solely upon the judgment of the court reopening the administrator's final account and disallowing the credit item of $6,000 and ordering said administrator to account to them therefor, and upon his default in complying with such judgment and order. The defendants in turn offer in evidence the record of the probate proceedings in the matter of said estate so far as they show the final accounting made in the year 1890

and the approval thereof. The surviving sureties upon
the bond also testify to their reliance upon said settlement
accounting and order of discharge, during all the period
from the date of such order until the commencement of
these actions. The trial court found for the defendants,
and entered judgment in their favor for costs, and plain-
tiffs appeal.

The material facts are not the subject of any serious
dispute. As will be seen by reference to the opinion filed
in *Tucker v. Stewart, supra,* Stewart, instead of paying
said sum of $6,000 to the guardian, kept and converted it
to his own use, giving his personal promissory note for
the amount to the guardian, who gave him a receipt for
it as for a payment in money. This we held to be a
fraud upon the wards, and that they were entitled to have
the approval of the final report set aside, the account re-
opened, and the administrator held liable to pay over the
money so withheld by him. Complying with this decision
the trial court, as we have seen, did reopen the account
and order the administrator to pay over or make settle-
ment for the sum thus found to be in his hands. This
he did not do, and plaintiffs seek in the present proceed-
ings to enforce the collection of the debt by action on the
bond given by him to secure the faithful performance of
his trust. It follows of necessity that unless the plaintiffs
have in some manner estopped themselves from enforcing
such demands, or it shall appear that the statute of limi-
tations has intervened, or that said judgment reopening
the account was obtained by collusion or fraud, they have
a clear and unquestionable right to recover, because the
failure to make payment of the trust funds in compliance
with the order of the court was a palpable breach of the
duty, for the performance of which the bond was given
as security.

There is no plea that the judgment was fraudulently
or collusively obtained, and the court can not, in this

proceeding, inquire into the justice of the claim upon
which that adjudication was founded.  *Chase
*v. Wright,* 116 Iowa, 555; *Irwin v. Backus,*
25 Cal. 214 (85 Am. Dec. 125); *State v.
Holt,* 27 Mo. 340 (72 Am. Dec. 273).

1. ADMINISTRA-
TORS: action
upon bond:
judgment:
conclusiveness.

The plea of estoppel is also manifestly without merit.
There is nothing in the record tending to show that plain-
tiffs have in any manner deceived or misled the sureties
to their injury.  Beginning promptly when
the eldest of the three wards arrived at ma-
jority, and while the others were still minors, they set
the machinery of the law in motion to obtain redress for
the wrong they claimed to have suffered.  They did not
err in their choice of remedy, for, until upon some direct at-
tack, the judgment approving the final report and discharg-
ing the administrator should be set aside, it stood as a
complete adjudication of the account, and no action would
lie against the administrator or the sureties upon his bond
to compel a restitution of the sum represented by the
alleged fraudulent credit.  Their only adequate relief was
to be found in equity, and its aid they invoked.  Con-
sidering the stubborn resistance they encountered, and
the erroneous adverse rulings for the correction of which
they were compelled to appeal to this court, we can not say
they are chargeable with undue delay in bringing the issue
thus raised to a final hearing.  Promptly, also, when the
appeal was decided in their favor, they applied for and
obtained the judgment reopening the account and ordering
the administrator to satisfy their claim, and seven months
later, such order not being obeyed, they instituted the
action now under consideration.  If good faith with the
sureties required anything more at plaintiffs' hands than
they are shown to have done, it does not appear in the
record nor is it suggested in argument.  It may be and
doubtless is true that the sureties confidently relied upon
the approval of the final report and the discharge of

2. SAME: laches:
estoppel.

the administrator as an effectual release of their lia-
bility upon the bond; but this confidence evidently had
its basis in their interpretation of the legal effect of such
judgment. It could not have been caused by the conduct
of the plaintiffs, for they were at all times contending
that equity would set aside said adjudication and enable
them to prosecute their claim.

These actions are at law, and no delay in bringing them,
however prolonged, short of the full period of the stat-
ute of limitations, will serve as a defense
3. SAME:       thereto. The plea of laches is sometimes
allowed to prevail in equity, but it has no place in an
ordinary action for the recovery of debt.

We come, then, to the plea of the statute of limita-
tions which affords the only debatable ground in support
of the position taken by the appellees. When did the
plaintiffs' right of action accrue? The prop-
4. ACTION UPON
   EXECUTOR'S   osition for the appellees is stated in their
   BOND: limita-
   tions.       brief as follows: "When the administrator
reported in his final report, as a payment, the $6,000
represented by his note, he thereby claimed a credit, and
denied further liability therefor, and, if it was not a
proper credit, the plaintiffs at once were entitled to begin
a suit on his bond. *Wolf v. Wolf,* 97 Iowa, 279, 285.
And no failure of plaintiffs to demand payment would
delay the running of the statute. *Lower v. Miller,* 66
Iowa, 408; *Ackerman v. Hilpert,* 108 Iowa, 247." And
such we may assume was the view of the trial court. If
we correctly apprehend the meaning of the language here
employed, it is argued that, when Stewart filed his final
report claiming this wrongful credit, a right of action on
the bond at once accrued to the appellants, and nothing
thereafter occurring served to interrupt its running until
the bar became complete one year after the youngest ward
became of age in 1901. But a little reflection will make
plain the fallacy of the argument. The administrator's

final report and its approval were matters of which the
court had full jurisdiction in the probate proceedings,
and neither appellants nor any other beneficiary of the
estate could properly interrupt or interfere with those
proceedings by instituting an action upon the bond.   If
every heir or legatee discovering fraudulent credits in
the final report of an administrator should be authorized
.to bring·action at once upon the bond, instead of .object-
ing to the report and contesting its allowance, the prac-
tice would develop indescribable confusion, and estates
be wasted in multiplicity of litigation.   The item of $6,000
which is the subject of controversy was already before the
court for its consideration, and even though fraudulent it
gave rise to no right of action on the bond until its spuri-
ous character had been adjudicated, and· the administrator
had failed to make proper accounting for the money it
represented.   When the judgment approving the report,
including this item, and discharging the administrator
was entered, it constituted a complete adjudication thereof,
and, until in some appropriate proceeding it was reversed,
vacated, or set aside, no action at law could be maintained
upon the bond, for to such an action the judgment would
be a final and conclusive answer of nonliability.   The
validity of the judgment was not open to collateral at-
tack.   When no appeal has been taken and ordinary appli-
cation for a new trial is not available, such a judgment
can be opened up only .by an exercise of the court's equit-
able jurisdiction.   *Rogers v. Johnson,* 125 Mo. 202 (28
S. W. 635); *Holden v. Lathrop,* 65 Mich. 652 (32 N. W.
879); *State v. Burkam,* 23 Ind. App. 271, 55 N. E. 237;
*Cowins v. Tool,* 36 Iowa, 82; *Peacocke v. Leffler,* 74 Ind.
327; 18 Cyc. 1192, 1196.

A right of action did accrue to plaintiffs at the date
of the judgment approving the report, but it was not a
right of action on the bond.   The right which they then
acquired was to an action in equity to vacate the judg-

ment and reopen the account for the purpose of canceling
the credit which had been wrongfully obtained. The
right under our statute continued as to each plaintiff for
the remainder of his or her minority and for one year
thereafter. Code, section 3453. They did begin such
action within the period thus allowed to them, and ulti-
mately secured an adjudication vacating the judgment,
reopening the account, and disallowing the credit item of
which they complained. It was then that the right of
action here sought to be enforced accrued. Counsel for
the appellee overlook the fact that there may be successive
and distinct breaches of the bond growing out of the same
transaction, and while the statute of limitations may have
run as to the earlier, it may be no defense to the later
breach. It may be, though we need not here decide,
that the transaction between Stewart, the administrator,
and Tucker, the guardian, was a breach of the bond for
which a recovery of at least nominal damages could have
been then had, even though upon demand for settlement
the money had been promptly produced. So, also, we
could concede counsel's contention that the presentation
of the final account containing the claim of a credit for
$6,000 which had never in fact been paid was a breach
of the bond for which a right of action at once accrued.
If the court had refused to allow the credit, and had
entered judgment requiring the administrator to pay over
to the guardian the full amount in money or its equiva-
lent, his failure to comply with that order would have
been a new breach of the bond for which an action would
lie at any time within ten years from the date of such
judgment. So, also, when the approval of his report in-
cluding the wrongful credit was set aside, and he was
ordered to account to the appellants, his refusal so to do
was a new and distinct violation of his trust, for which
a new right of action arose. See *Thayer v. Keyes,* 136
Mass. 104. The cited case is quite in point. It was there

the duty of an administrator to invest a certain fund, and pay over the interest collected thereon to a testator's widow for life. He did not invest the money, but gave the widow his own note. More than twenty years later and after the death of the widow, the legatees interested in the remainder brought suit on the administrator's bond. In overruling the plea of the statute of limitations the court says that, while the original failure to invest the money as directed may have been a breach of the bond for which an action would lie, yet it afforded no sufficient answer to the plaintiff's demand, and that, while they "might perhaps have maintained an action upon the first breach of the bond, they may also maintain an action for any subsequent breach. A waiver of the first breach or any number of breaches will not prevent them from suing on a subsequent one. It is well settled that an executor's bond is a continuing one, commensurate in time with his duties, and each violation of it is a breach and furnishes a cause of action." See, also, *Fuller v. Cushman,* 170 Mass. 286 (49 N. E. 631).

The inadmissibility of any other rule can be easily illustrated. If, for instance, an estate has been for nine years in the process of administrating, and the final report reveals a sum of money belonging to the estate which the administrator converted to his own use in the first year of his service in such trust, and an order is entered requiring him to account for it, such order imposes upon him a duty which he can not violate without breach of his bond, if then two years later the order not being obeyed action is brought on the bond and the administrator and his sureties set up in defense the statute of limitations because the original wrong was committed, and the first breach of the bond was consummated, more than ten years before suit was brought, no court would be likely to give such a plea any serious consideration. Obedience to the order of the court is one of the duties pertaining to the administrator's

trust, and the breach of that duty is of itself a sufficient cause of action, and it is not open to him to say that the original default on which that order was based occurred at a time so long prior thereto that the bar of the statute has intervened. All controversy over the original liability has been settled and merged in the order or judgment requiring him to pay, and the statute of limitations starts anew therefrom.

Appellees concede in argument that, until vacated and set aside, the adjudication of April 11, 1890, approving the final report, was a complete bar to the maintenance of an action on the bond, but they say this can not prevent the operation of the statute of limitations because (quoting from the brief): "If such judgment of discharge was in fact subject to attack, the administrator and sureties could have been made parties to a proceeding to set the same aside, as was done in *Arnold v. Spates,* 65 Iowa, 571, and as was expressly held the proper procedure in *Witt v. Day,* 112 Iowa, 110, *supra; Payne v. Hook,* 7 Wall. 425 (19 L. Ed. 260); *Reinhardt v. Gartrell,* 33 Ark. 727, and *Clark v. Shelton,* 16 Ark. 474, and these defendants would then have had an opportunity to defend against such an attack. They would have had their day in court, and no other suit or action would have been necessary." But the conclusion which counsel draw from these premises is clearly untenable.

It may be admitted that appellants could properly have made the sureties parties to the proceeding to vacate the judgment, but certainly they were not necessary parties. Had they been made parties they could have done no more—generally speaking—than to unite with the administrator in resisting the charge of fraud on which the vacation of the judgment was asked. The extent of their liability, if any, on the bond was not, and ordinarily could not have been, put in issue. The essence of the relief asked was the setting aside of the adjudication to

enable the appellants to be heard in resistance to the
credit item of which they complained. Such vacation was
a necessary preliminary to their right of action at law
for recovery on the bond. The vacation of the judgment
would not of itself or of its own force work a rejection
or cancellation of the item challenged, but it would reopen
the subject of its allowance for trial upon the appellant's
exceptions thereto. If those exceptions should be sustained,
and the money represented by such item be not accounted
for, an action at law upon the bond would lie. Assuming,
for the purpose of this case, that appellants could prop-
erly have made the sureties parties to the proceeding for
vacation of the judgment and could properly have asked
therein for recovery on the bond, we are clearly of the
opinion they were not required so to do, and that if the
prayer for a vacation of the judgment and reopening the
account were granted, and their objections to the credit
of $6,000 sustained, they were entitled to their action
at law for the collection of the moneys due them from
the administrator and his sureties. The liability of the
administrator on the bond given by him for the faith-
ful performance of his trust is at all times the measure of
the liability of his sureties. If there be any exception to
this rule, we can conceive of none in cases like this. It
would be little less than absurd to hold that an admin-
istrator may fraudulently obtain an unjust allowance of
credit in his final report, and then have the statute of
limitations run in his favor during all the time he con-
sumes in resisting an action to reopen the account. If
such be the law it indicates a serious defect in our system
of legal justice. None of the authorities cited by counsel
support such a conclusion, and if the administrator can
not find shelter under the statute of limitations, then his
sureties can not avail themselves of such defense. Their
express undertaking was that said administrator should
"well and truly perform and discharge all duties imposed

upon him by law" in the matter of such administration.
Among the duties thus imposed upon him was obedience to
the order and judgment of the court entered April 8,
1904, to account for said item of $6,000, and, for his
default in that respect, his sureties are of necessity liable
to answer. The fact that this right of action did not
.accrue until after the order of April 11, 1890, is imma-
terial, for, while the default in the observance of the
later order for payment of the money did not occur until
April 8, 1904, the liability to such order had its origin
in the fraud which vitiated the approval of the final re-
port on the date first mentioned. Upon the vacation of the
judgment approving the report it ceased to be available
to the administrator or to his sureties as a defense to the
appellants' demand.

Whether the fault in the administrator's final report
was due to his fraud or mistake, it was confessedly his
duty to rectify it, and, so long as that duty remains legally
enforceable against him, it remains enforce-
able against those who have undertaken to
assure his performance of it. In other
words, so long as there remains any duty
which he as administrator is legally liable to perform,
so long the obligation upon the bond continues to remain
upon his sureties. *Alexander v. Bryan,* 110 U. S. 414
(4 Sup. Ct. 107, 28 L. Ed. 195); *Deobold v. Opperman,*
111 N. Y. 531 (19 N. E. 94, 2 L. R. A. 644, 7 Am.
St. Rep. 760); *Scofield v. Churchill,* 72 N. Y. 565;
*Boone Co. v. Jones,* 54 Iowa, 709; *Parsons v. Milford,*
67 Ind. 489.

5. VACATION OF
EXECUTOR'S
FINAL REPORT:
parties:
notice.

To say that an order of discharge, obtained by fraud
of the administrator, operates to relieve the sureties from
liability on the bond, although that order has been vacated,
would be to hold that they may reap advantage from the
very wrong against which they undertook to hold the ap-
pellants harmless. The sureties upon such bond are in

privity with their principal, and the fact that they were not served with formal notice of the proceedings to. vacate the order approving the final report does not effect any change in that relation. Neither were they formally made parties to the final accounting. They are presumed to have knowledge of all orders of court regularly and properly entered in the matter of settling the estate upon which their principal administers. *Casoni v. Jerome,* 58 N. Y. 315; *Salyer v. Slate,* 5 Ind. 202; *State v. Berning,* 74 Mo. 87; *Perkins v. Scott,* 9 Ohio Cir. Ct. R. 207; *Baggott v. Boulger,* 2 Duer (N. Y.) 160; *Deobold v. Opperman,* 111 N. Y. 531 (19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760); *McMahon v. Smith,* 24 App. Div. 25 (49 N. Y. Supp. 93). It follows that, as a settlement and discharge of the principal obtained by fraud and set aside by the court because of such fraud can not be pleaded by him in excuse of his failure to pay the sum with which he is found chargeable on a reopening of the account, it is equally unavailable to his sureties whose liability on the bond is coextensive with his own.

In avoidance of this conclusion appellees urge that, while the rule making coextensive the liability of principal and sureties upon a bond of this character is well established, it is not applicable here, because **6. EXECUTORS: fraud: liability of sureties.** from the date of the order approving the final account the relation of principal and surety between the administrator and his bondsmen ceased to exist. But for reasons already pointed out, this objection is unsound. One of the things which this bond was given to secure was an honest and correct final accounting, and until that duty was performed liability on the bond continued. The presentation and approval of an account tainted by fraud or by serious mistake, though operating for the time being to prevent action on the bond, could not operate to cancel or release all liability thereon so long as any right remained to set aside the order thus

'wrongfully obtained. Pending the equitable proceeding, there was at most a suspension of their liability to an action at law on the bond, but there was no release of liability until the administrator's duty was performed.

As the judgment below must be reversed upon the merits of the controversy, we need not consider other questions argued by counsel. The case is ordered remanded for further proceedings not inconsistent with the views herein expressed.—*Reversed.*