## BAILLARGEON v. DUMOULIN.

(Supreme Court, Trial Term, Clinton County.   November, 1913.)

1. CHATTEL MORTGAGES (§ 188*)—SALE OF MORTGAGED GOODS.

Where the mortgagee of a stock of merchandise permitted the mortgagor to remain in possession and to sell the goods in the usual course of business, and use the proceeds to purchase other goods to replenish the stock, the mortgage was void as against the mortagor's creditors.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent Dig. §§ 393–404; Dec. Dig. § 188.*]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 232*)—RIGHTS AND DUTIES OF ASSIGNEE.

An assignee for the benefit of creditors is not the owner of the property assigned, but a trustee of an express trust; his obligations being those of a voluntary trustee not acting gratuitously, and bound to exercise that degree of diligence which persons of ordinary prudence are accustomed to exercise in their own affairs.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 757; Dec. Dig. § 232.*]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 228*)—FRAUDULENT MORTGAGE—DISAFFIRMANCE—DUTY OF ASSIGNEE.

Personal Property Law (Consol. Laws, c. 41) § 19, provides that an assignee or trustee for the benefit of creditors, or others interested in personal property held in trust, may disaffirm and treat as void and resist any act done, or transfer or agreement made, in fraud of any creditor, including himself, interested in the estate or property, and a person who fraudulently receives or interferes with the personal property of an insolvent is liable to the trustee for the value thereof, for all damages to the trust estate. *Held* that, where an assignee for the benefit of creditors was charged with knowledge that a chattel mortgage on a portion of the assignor's goods was void as to creditors, it was the duty of the assignee to disaffirm the same and treat it as void.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 751–754; Dec. Dig. § 228.*]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 179*)—VOID MORTGAGE—SALE OF GOODS—PROCEEDS.

Where, notwithstanding the mortgage on a portion of a debtor's goods assigned for the benefit of creditors was void, the assignee delivered the goods to the mortgagee, who, without removing them, employed the assignee to sell the goods with the remainder of the stock, and the proceeds of all the sales were deposited to the assignee's credit, excepting certain payments, the mortgagee acquired no rights by such symbolical delivery, but took subject to the execution of the trust, and subject to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assignee's right to reclaim the property, or its proceeds, and administer the same for the benefit of creditors.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 526; Dec. Dig. § 179.*]

5. CONTRACTS (§ 71*)—CONSIDERATION—FORBEARANCE.

Where a chattel mortgage on a merchant's stock of goods was void as against his assignee for the benefit of creditors, and was not doubtful, colorable, or plausible, the forbearance to assert the mortgage was not a sufficient consideration for the assignee's agreement to deliver to the mortgagee the mortgaged property that remained at the time of the assignment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 295, 296, 298, 316–324; Dec. Dig. § 71.*]

Action by Oliver E. Baillargeon against Edward C. Dumoulin. On motion to dismiss and to set aside the verdict for plaintiff on the grounds specified in Code Civ. Proc. § 999. Motion granted.

Fred M. LaDuke, of Keeseville, for plaintiff.
S. E. Maders, of Keeseville, for defendant.

WHITMYER, J. Prior to January 5, 1911, plaintiff and his brother were copartners in a business which was conducted by them in the village of Keeseville, county of Clinton, in this state. The partnership was dissolved on that day. The former sold his interest therein to the latter, and took a chattel mortgage for $900 on the merchandise in payment. The merchandise remained in the possession of the mortgagor. He continued the business until September 25, 1911, when he made a general assignment for the benefit of his creditors to the defendant, who accepted the trust. In conducting the business, the mortgagor sold goods included in the mortgage and purchased other goods with the moneys thus received. He says that he had disposed of 75 per cent. of the same at the time that the assignment was made. This was done with the knowledge and assent of plaintiff. The mortgage required a payment of $25 every three months. The payments made prior to the assignment amounted to $125. These were as follows: March 2, 1911, $75; June 5, 1911, $25; and September 4, 1911, $25.

On the day after the assignment, plaintiff made a demand, through his attorney, upon defendant, as assignee, for the mortgaged goods which remained, stating, in effect, that if the demand was not complied with proceedings would be taken to enforce compliance. There is evidence to the effect that defendant's attorney informed plaintiff in October, 1911, that his mortgage was invalid. On November 10, 1911, plaintiff posted notices of sale, under his mortgage, to take place November 16, 1911. Defendant states that notices of sale under the assignment had been posted before this time. On November 11, 1911, or the day thereafter, the parties and their attorneys met at the store, where the business had been conducted, to identify the goods covered by the mortgage. Plaintiff had a list of said goods, and defendant had the assignee's inventory. Plaintiff says that they went through the entire stock, and that the rubbers were not marked, because they were in the store when the mortgage was given. It does not appear

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that they were separated from the other goods. He says, further, that the shoes and other goods, which were there when the mortgage was given, were separated and marked, and that defendant then said, "Here are your goods; let me sell them for you; I will charge 5 per cent.; if you have enough to cover your mortgage, I will pay you;" and that he (plaintiff) replied by saying, "All right." Plaintiff's attorney testifies as to the marking and as to the agreement for the sale of the goods, but does not say that they were separated or tendered, as plaintiff stated. Defendant says that they did not go through the entire stock because of lack of time. He furnished some evidence as to the purchase of some rubbers after the mortgage was given, but his attorney says that all in stock were there before and at that time. He also produced evidence to the effect that some shoes in boxes were taken from the shelves and marked, and then put back; but he denied that any goods were separated and turned over to plaintiff, and that he agreed to sell them for plaintiff.

The sale under the assignment commenced November 13, 1911. The entire stock was sold. Plaintiff says that defendant announced, at the commencement of the sale, that he was selling for plaintiff under the mortgage. Defendant says that he stated that the mortgage would not affect the sale. A record of sales was kept, and all sales of stock included in the mortgage were checked. Plaintiff says that the mortgage sales amounted to $850, or thereabouts. Defendant took all the moneys received from all the sales and deposited them to his credit as assignee, and these still remain to his credit as assignee, except the amounts which have been paid to plaintiff. The latter purchased $70.-74 worth of goods at the sale, and received $30 in cash during the sale, and a check for $300 on March 16, 1912. In amount, these payments were a little more than plaintiff's proportionate share under a general distribution. They were made without leave of the court, and defendant refused to make more.

Plaintiff then commenced this action against defendant individually. Upon the trial, defendant moved to dismiss at the close of plaintiff's case, and also at the close of the entire case. Decision was reserved. The jury gave plaintiff a verdict for $437.69, and found to the effect that defendant, as assignee, delivered the mortgaged goods which remained to plaintiff under the mortgage, and that the latter thereupon delivered them to defendant individually, to be sold by him for plaintiff, along with the rest of the stock, on a commission to be paid by plaintiff. Defendant has moved to set aside the verdict and the finding of the jury on the several grounds specified in section 999 of the Code of Civil Procedure.

[1, 2] The chattel mortgage in question was fraudulent and void as to the creditors of the mortgagor. Potts v. Hart, 99 N. Y. 168. 1 N. E. 605. Defendant took possession of the entire stock, including the mortgaged goods which remained at the time, as assignee of the mortgagor under a general assignment for the benefit of creditors. Defendant thereby became a trustee. The essential characteristic of such an assignment is the presence of a trust. The assignee is merely trustee, and not owner; he buys nothing and pays nothing, but takes

the title for the purpose of trust duties. Brown v. Guthrie, 110 N. Y. 435, 18 N. E. 254; Taggart v. Herrick, 55 Hun, 569, 9 N. Y. Supp. 758. His obligations are those which pertain to voluntary trustees, not acting gratuitously, without compensation, and he is bound to exercise that degree of diligence which persons of ordinary prudence are accustomed to use in their own affairs. Matter of Cornell, 110 N. Y. 357, 18 N. E. 142.

[3] Personal Property Law, § 19, provides that:

"An executor, administrator, receiver, assignee, or trustee may, for the benefit of creditors or others interested in personal property held in trust, disaffirm, treat as void and resist any act done, or transfer or agreement made in fraud of the rights of any creditor, including himself, interested in such estate or property, and a person who fraudulently receives, takes or in any manner interferes with the personal property of a deceased person, or any insolvent corporation, association, partnership or individual is liable to such executor, administrator, receiver or trustee for the same or the value thereof, and for all damages caused by such act to the trust estate."

There is evidence that both plaintiff and defendant knew that the mortgage was void as to creditors. At any rate, that is the presumption, because each of them knew all of the facts and circumstances relating to it. Jacobs v. Morange, 47 N. Y. 57; Taplan v. Wilson, 4 Hun, 248. It was the duty of defendant to disaffirm and to treat it as void.

[4] The jury have found that he delivered the remainder of the mortgage property, in his possession as assignee, to plaintiff under the mortgage, and that the latter, immediately thereafter, returned it to him individually, under an agreement to sell on commission. The property was not removed by plaintiff after the alleged delivery, but remained in the possession of defendant, and was sold by defendant, as assignee, along with the remainder of the stock. He took all moneys received from sales, and deposited them to his credit as assignee, and, excepting the payments to plaintiff, these still remain to his credit as such assignee. If the evidence is sufficient to show a delivery, nevertheless, it was by defendant in his capacity as assignee, and plaintiff knew it. Under these circumstances, no rights accrued to the latter; but he took subject to the execution of the trust committed to the defendant, and subject to his right as assignee to reclaim the property or to claim the avails of same. Lewin on Trusts, p. 279; Wetmore v. Porter, 92 N. Y. 84, 85; Lee v. Horton, 104 N. Y. 541, 11 N. E. 51; Deobold v. Oppermann, 111 N. Y. 539, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; First National Bank v. Broadway Bank, 156 N. Y. 467, 468, 51 N. E. 398, 42 L. R. A. 139. Lewin on Trusts, p. 279, lays down the rule as follows:

"It is a universal rule, as trusts are now regulated, that all persons who take through or under the trustee shall be liable to the execution of the trust; so all assigns of the trustee by acts inter vivos, except purchasers for a valuable consideration without notice, will be bound by the trust."

In Wetmore v. Porter, supra, 92 N. Y. at page 84, the court says:

"It is not easy to see how a right can accrue to a person through a conveyance from one who is known to be incapable of conveying."

And at page 85:

"We see no reason why a trustee, who has been guilty even of an intentional fault, is not entitled to his locus penitentiæ, and an opportunity to repair the wrong which he may have committed."

In Lee v. Horton, supra, the court says:

"Parties are always chargeable with knowledge of the law, and they must, therefore, have known that the plaintiffs held these moneys in trust, and were incompetent to dispose of them, even by the most express agreement, in a manner contrary to the purposes of the trust."

In Deobold v. Oppermann, supra, the court says:

"It would be contrary to the policy of the law to allow an administrator, at the outset of his administration, by contract, to place the funds of the estate beyond the reach of the court, and irreclaimable until after all the duties of administration have been performed by the administrator. It would certainly be no excuse to an administrator, for disobedience to an order of the surrogate as to the disposition of any portion of the estate, to allege that it was impossible for him to obey, because he had placed its funds out of his possession. Neither would it be any defense to a third person, in an action by any one having authority to recover possession of such funds, to plead that he held them by virtue of a contract, with a former trustee, entered into with him as such trustee."

And in First National Bank v. Broadway Bank, 156 N. Y. at pages 467, 468, 51 N. E. at page 400 (42 L. R. A. 139), the court says:

"Any person, who receives property, knowing that it is the subject of a trust and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right not only of the cestui que trust, but also of the trustee, to reclaim possession of the property."

The rules in said cases stated are equally applicable to transactions of assignees.

[5] The contention of plaintiff that forbearance on his part to assert his mortgage was a sufficient consideration for the delivery to him by defendant of the mortgaged property, which remained, and the subsequent agreement for its sale, cannot prevail, because the claim under the mortgage, as against defendant, was not doubtful, colorable, or plausible, but was untenable. 1 Pars. Cont. (8th Ed.) 441, and note; Wharton on Contracts, § 532; Farmers' Bank v. Blair, 44 Barb. 641; Springstead v. Nees, 125 App. Div. 232, 109 N. Y. Supp. 148; White v. Hoyt, 73 N. Y. 505; Zoebisch v. Von Minden, 120 N. Y. 406, 419, 24 N. E. 795; Cox v. Stokes, 156 N. Y. 491, 51 N. E. 316. Moreover, the parties knew—at least they are chargeable with the knowledge—that the mortgage was void. The case of Lane v. Lutz, *40 N. Y. 203, cited by plaintiff, related to a mortgage, which had not been filed, and not to a fraudulent mortgage.

It seems to me that the findings and verdict of the jury must be set aside, and the motion of defendant for a dismissal must be granted.