## ADIN THAYER, Judge of Probate, *vs.* ASA KEYES.

Worcester.   Oct. 3.—Nov. 28, 1883.   FIELD & W. ALLEN, JJ., absent.·

A testator authorized his executor to sell and convey all or any part of his real estate, and directed him to appropriate a certain sum of money, to be raised out of his estate, and to place the same at interest secured by mortgage; and that the interest of said sum be paid to the testator's wife during her life, and, after her death, said sum be divided between several persons named. The executor did not appropriate and set apart the sum directed by the will, but gave to the widow his personal bond to pay her the interest of that sum; and, after her death, failed to pay the legacies to the persons named. *Held*, that an action brought, for the benefit of the legatees, against a surety on the executor's bond, more than twenty years after the failure of the executor to appropriate the money raised from the estate, but within twenty years from the death of the widow, was not barred by the statute of limitations.

CONTRACT on a probate bond, executed on December 6, 1853, by Gardner E. Goodell, executor of the will of Abel Goodell, as principal, and by the defendant and Ezekiel Pierce as sureties, and conditioned, among other things, to "administer according to law and to said will" the estate of Abel Goodell, and to "render upon oath a just and true account of his administration, within one year, and at any other times when required by the Judge of Probate." Writ dated September 14, 1882. Answer: 1. A general denial. 2. The statute of limitations. The action was brought for the benefit of Susan P. Goodell and Mary M. Davis, legatees under the will. Trial before *W. Allen*, J., who reported for the consideration of the full court the following case:

The will of Abel Goodell, which was duly admitted to probate on December 6, 1853, contained, among others, the following clauses: " I hereby fully authorize and empower my said son hereinafter named as my executor to sell and convey, in fee simple, all my land and real estate of every description, or any

part or parts thereof, as he may think most proper. And I direct my said executor to appropriate the sum of two thousand dollars, to be raised out of my estate, and to place the same sum at interest well and fully secured by mortgage or mortgages of real estate, and I direct that the interest of the said sum of two thousand dollars be paid to my beloved wife, Mehitable Goodell, annually, during her natural life, for her support and maintenance." " After the decease of my said wife, I give and bequeath the said sum of two thousand dollars as follows : two hundred dollars to the said Susan P. Goodell; three hundred dollars to my daughter, Mary M. Davis, and one hundred and fifty dollars to my granddaughter Elmira Rice; one hundred and fifty dollars to my grandson, Israel S. Worcester; and the remainder of said two thousand dollars to the said Gardner E. Goodell and to his children after him." " And all the rest, residue, and remainder of my property and estate, I give, bequeath, and devise to the said Gardner E. Goodell, and to his children after his decease; and lastly I hereby constitute and appoint my said son, Gardner E. Goodell, sole executor of this my last will and testament."

Letters testamentary were issued to Gardner E. Goodell on December 6, 1853, and he forthwith gave due notice of his appointment. On March 15, 1859, Gardner E. Goodell conveyed the real estate of the testator, in execution of the power contained in the will, to one Hinds, who immediately reconveyed the same premises to him. These conveyances were without any reservations. On March 16, 1859, Goodell mortgaged said estate to another person for $1000. In this deed the following words were contained in the covenant against incumbrances, " except the rights, if any, of the widow of Abel Goodell," but with full covenants of warranty. No money passed between the parties to the first two conveyances, and the same were made to enable Goodell to mortgage the property. With the $1000 obtained on the mortgage, Goodell paid certain legacies given by the will, and paid the balance due on an old mortgage on the estate. On January 1, 1862, the above-mentioned mortgage was discharged, and Goodell mortgaged the estate again for $1200, with the following words in the covenant against incumbrances, "except the rights of the widow," and with the

words " except as aforesaid " in the covenant of warranty. This mortgage continued on the property until the death of the testator's widow, which occurred in 1868.    There were two other mortgages given by Goodell, one in 1862 and one in 1866, in both of which the rights of the widow were excepted in the covenants ; and, subject to said mortgages, Goodell was then seised of said real estate, and the equity of redemption was then of sufficient value to pay the legacies provided for in the will. Some time after his appointment as executor, Goodell gave to the widow his personal bond to pay her the interest of $2000 during her life, in settlement of her claim under the will.    She lived with him a part of the time, and he paid her all said interest.    Goodell never appropriated the sum of $2000 raised out of the testator's estate, and placed the same at interest, as directed by the will, or in any other manner complied with the provisions of the will, except as herein stated.    After the death of the widow, Goodell paid the legacies to Elmira Rice and Israel S. Worcester, but has never paid the legacies provided for to Susan P. Goodell and Mary M. Davis, although the same have been demanded.    These two legatees were of age at the time of the testator's death.    In 1877, Goodell conveyed said real estate to his son, Joseph Goodell.    Goodell never filed any account as executor until July, 1882, when, upon being cited, he filed an account, which has not been allowed.    The judge found for the plaintiff.

If the action was not barred by the statute of limitations, judgment was to be entered on the finding ; otherwise, for the defendant.

*F. P. Goulding*, for the defendant.

*D. Manning, Jr.*, for the plaintiff.

C. ALLEN, J.    While it is no doubt true that the testator expected the executor of his will to appropriate and set apart two thousand dollars out of his estate, and to place the same at interest well secured by mortgage, and that he looked to this fund so appropriated and set apart as the convenient source from which to pay the legacies now in question, it is nevertheless apparent that he did not mean to make the payment of them dependent upon the faithful observance of his directions in this respect by the executor.    It is impossible to suppose that

the testator intended to leave it within the power of the executor to defeat the legacies by a failure to set apart the money as a separate fund. The doctrine of the ademption of legacies by a disposition or loss, in the testator's lifetime, of the specific property bequeathed, has no application to a case like the present, where the fund from which the legacies were to be paid was not in existence at the testator's death, but was to be set apart by the executor out of the general estate. Nor could these legacies be considered as specific, even if the fund had then been in existence. *Wilcox* v. *Wilcox*, 13 Allen, 252.

It may perhaps be true, as contended by the defendant, that the omission of the executor promptly to obey the directions of the will in respect to setting apart and investing the fund was of itself a breach of the bond for which an action could have been maintained for the benefit of these legatees. Although the widow, who was entitled to the interest of the money, was content to waive a strict compliance with these directions, and to accept in lieu thereof a bond for the payment during her life, it was nevertheless a continuing duty, resting upon the executor, down to the last moment of her life, to make the investment for the security of these legatees; and upon her death, it became his duty to pay to them at once the amount of their respective legacies. Even if they themselves waived the earlier duty of investing the money for their security, this would not have the effect to work a forfeiture of their right to call for the payment of the legacies. They might perhaps have maintained an action upon the first breach of the bond; but they may also maintain an action for any subsequent breach. A waiver of the first breach, or of any number of breaches, will not prevent them from suing on a subsequent one. It is well settled that an executor's bond is a continuing obligation, commensurate in time with his duties, and each violation of it is a breach, and furnishes a cause of action. *McKim* v. *Williams*, 134 Mass. 136. *Prescott* v. *Read*, 8 Cush. 365. *Loring* v. *Kendall*, 1 Gray, 305, 313. See also *Austin* v. *Moore*, 7 Met. 116; *Blair* v. *Ormond*, 20 L. J. (N. S.) Q. B. 444, 453; *Sanders* v. *Coward*, 13 M. & W. 65, 71. The duty of paying the legacies arose within twenty years, and there was therefore a breach of the bond for which the action may be maintained. *Judgment for the plaintiff.*