DONALD M. HILL & others, trustees, *vs.* HENRY C. WILEY, trustee, & another.

Suffolk.    January 11, 1935. — September 21, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Subrogation. Trust,* Embezzlement by trustee, Trustee's bond, Distribution, Trustee's accounts. *Bond,* Of trustee. *Surety. Negligence,* Of trustee. *Interest.*

At the moment when a trustee under a will embezzled assets of the trust there was a breach of his probate bond and an obligation thereunder of him and his surety to the beneficiaries of the trust arose; and an embezzlement by him thereafter of funds from another estate of which also he was trustee and his use of them to make final distribution to the beneficiaries under the first trust entitled succeeding trustees of the second trust, through subrogation to the right of the beneficiaries of the first trust to enforce such obligation under the bond in the first trust, to maintain a suit in equity on that bond where the beneficiaries under that trust had been fully satisfied and so would not be prejudiced by the subrogation.

Neither negligence of cotrustees of one who had embezzled funds of the trust and used them for purposes of distribution to beneficiaries under another trust whose funds he as sole trustee previously had embezzled in breach of his probate bond in that trust, nor the fact that there had been no probate accounting by him as such sole trustee establishing the breach of that bond, was a defence to a suit by the cotrustees to enforce through subrogation rights against the surety upon that probate bond.

A petition in equity in a probate court for subrogation to rights of beneficiaries under a trust against a surety upon the trustee's bond, broken by his defalcations, properly was found not to be a demand giving rise to a right in the petitioner to interest upon the amount of his claim from the date the petition was filed, where it appeared that at that time another like petition was pending, that the amount of the

trustee's defalcations had not been determined, that there had been no adjudication that the requirements for the application of subrogation existed, and that no ground appeared for preferring one petitioner over the other.

PETITION IN EQUITY, filed in the Probate Court for the county of Suffolk on April 6, 1933.

A demurrer by the respondent American Surety Company of New York was overruled by *Dolan*, J., and that respondent appealed from that ruling. Thereafter the case was heard on the merits by the same judge. A decree was entered from which the petitioners and the respondent surety company appealed.

*H. LeB. Sampson*, (*E. A. Howe* & *A. J. Rockwell* with him,) for American Surety Company of New York.

*E. A. Neiley*, (*D. M. Hill* & *D. M. Hill, Jr.*, with him,) for the petitioners.

DONAHUE, J. The respondent Wiley had been one of the trustees under the will of William H. Hill. He had also been a trustee under the will of Daniel Chamberlin. As trustee under the Chamberlin will Wiley gave a probate bond in the penal sum of $50,000 on which the respondent American Surety Company of New York was surety. The petitioners are the present trustees under the will of William H. Hill.

The petition which was brought in the Probate Court alleged among other things that the respondent Wiley, having earlier misappropriated funds of the Chamberlin trust, then misappropriated securities of the Hill trust, placed them or their proceeds in the Chamberlin trust and delivered the same in distribution of that trust to the beneficiaries thereunder; that a decree has been entered in the Probate Court on a final account filed by the trustees of the Hill estate charging Wiley with defalcations in an amount stated; that a decree has been entered in the Probate Court on the final account of Wiley as trustee under the Chamberlin trust charging him with the additional sum of $6,092.50 on account of an excessive credit in that amount, taken by Wiley in the account filed, in stating the value of certain bonds delivered to the beneficiaries in distribution; that the decree allowed the account as thus modified and further provided

that, the beneficiaries having accepted and received from the respondent surety company the sum of $3,500 in full accord and satisfaction of all their rights against the surety in respect to the delivery to them of said bonds, the beneficiaries now have no right to receive from said surety company anything on account of said bonds. The petition further alleged that Wiley, by reason of his misappropriation of funds of the Chamberlin trust, became indebted to the beneficiaries thereunder, and that since he used securities of the Hill trust to make good his defalcations from the Chamberlin trust the petitioners as trustees of the Hill trust should in equity be subrogated to the rights of the beneficiaries of the Chamberlin trust against the respondent Wiley and against the respondent surety company. The petition contained prayers that the petitioners be subrogated to the rights of the Chamberlin beneficiaries against the respondent surety company under its bond; that the surety company be ordered to pay to the petitioners the amount of its obligation under the bond which was discharged by misappropriation of the funds of the Hill trust and that the surety company be ordered to pay to the petitioners under the terms of the bond $50,000, the principal sum thereof; and for such further order as the court deemed proper.

The petition was taken as confessed against the respondent Wiley. A demurrer of the respondent surety company, on the ground that the allegations in the petition were insufficient to enable the petitioners to maintain the petition, was overruled. The probate judge who heard the petition on the merits filed a report of facts and entered a final decree which ordered the respondent Wiley and the respondent surety company jointly and severally to pay to the petitioners the sum of $41,849.42 without costs. The respondent surety company has appealed from the decree overruling the demurrer and from the final decree. The petitioners also have appealed from the final decree but solely on the ground that the decree did not allow interest from April 6, 1933, the date of filing of the petition. All the evidence has been reported.

The findings of the trial judge with respect to the defalca-

tions of Wiley are here briefly summarized. Prior to April 29, 1929, the term of the Chamberlin trust had ended and distribution of the principal of the fund was in order. The Hill trust was on that date still in the course of administration. Prior to April 29, 1929, Wiley had embezzled assets of the Chamberlin trust to an amount in excess of $90,000. On that day Wiley distributed to the beneficiaries of the Chamberlin trust negotiable bonds of the market value of $67,397.50. These bonds were the property of the Hill trust which Wiley misappropriated to make good in part his prior defalcations from the Chamberlin trust. At various times between August 26, 1929, and February 6, 1930, Wiley also misappropriated other negotiable bonds belonging to the Hill trust, sold them for $13,592, and applied their proceeds to restoring in part his previous defalcations from the Chamberlin trust. "Thus assets of the Hill trust of the total market value of $80,989.50 were stolen by Wiley from the Hill trust and applied by him to make up in part his previous embezzlements from the Chamberlin trust."

The respondent surety company contends that the evidence did not warrant the findings of the trial judge that prior to the distribution to the beneficiaries of the Chamberlin trust Wiley had embezzled assets of that trust to a substantial amount and made good the embezzlement with securities of the Hill trust. The finding was warranted that Wiley used in making distribution to the Chamberlin beneficiaries negotiable bonds which the trustees of the Hill trust had bought and paid for and held. The books of the Hill trust at the time of the distribution showed those bonds to be the assets of that trust. They were taken from the safe deposit box where its securities were kept, without the consent or the knowledge of the two other trustees and without any consideration being given to the trust. Wiley was later charged on the adjudication of the accounts of the Hill trustees in the Probate Court with defalcations in an amount of over $150,000 which included the value of the bonds here in question. On all the evidence the judge was warranted in finding that Wiley stole the bonds in question from the Hill trust. The time came in the early

months of the year 1929 when Wiley, who since January of that year had been the sole surviving trustee of the Chamberlin trust, must make distribution to the beneficiaries. There was evidence on which it could have been found that the bonds which he had stolen from the Hill trust constituted a substantial part of the assets which he distributed to the Chamberlin beneficiaries. The respondent surety company suggests that there might have been no shortage in the assets of the Chamberlin trust but that securities of that trust might, in some way, at some time, have been properly exchanged for the Hill trust's bonds. It also suggests that if there were such a shortage it might have been caused by acts of the deceased cotrustees of the Chamberlin trust. We find nothing in the record which makes either of these assumptions likely. The question whether, prior to the time of distribution to the Chamberlin beneficiaries in 1929, Wiley had already made substantial thefts from the Chamberlin trust was one of fact. We think the judge was warranted on the evidence in finding that the thief who stole the Hill bonds did so because there was a then existing deficiency in the assets of the Chamberlin trust caused by his embezzlement and the time had arrived when he must account to the beneficiaries of the Chamberlin trust.

It is established law in this Commonwealth "that where a trustee of several estates steals money from one, with which to pay the debts of another, the latter, having been unjustly enriched at the expense of the former, may be required in equity to make restitution." *Bremer* v. *Williams*, 210 Mass. 256, 257. *Newell* v. *Hadley*, 206 Mass. 335. *Fitcher* v. *Griffiths*, 216 Mass. 174. *Ricker* v. *Ricker*, 248 Mass. 549.

Property of the trustees of the Hill estate was stolen by Wiley to satisfy his obligations as trustee to the beneficiaries of the Chamberlin estate. Those beneficiaries were in a position analogous to that of creditors of the Chamberlin estate. The obligations of Wiley to them were fixed by the terms of his bond. The other respondent was surety for his performance of those obligations. The present trus-

tees of the Hill estate here seek to be subrogated to rights which, they contend, the beneficiaries of the Chamberlin trust had against Wiley and the surety on his bond. The petitioners assert and the respondent surety company denies that a liability on the bond arose at the time when Wiley embezzled funds of the Chamberlin estate, and that consequently an obligation of Wiley and his surety to the beneficiaries of the Chamberlin trust existed when the stolen property of the Hill trust was used in making distribution to the Chamberlin beneficiaries.

The second condition of the bond which the respondents gave expressed the most vital obligations of the relationship of Wiley to the beneficiaries of the Chamberlin trust: fidelity and honesty. It required that he "manage and dispose of all such estate, and faithfully discharge his trust in relation thereto, according to law and to the will of said testator." Wiley broke that particular condition of the bond at the moment he embezzled the assets of the Chamberlin trust. *McKim* v. *Glover*, 161 Mass. 418, 421. *Thayer* v. *Keyes*, 136 Mass. 104, 107. *McKim* v. *Williams*, 134 Mass. 136, 137. From that moment he owed to the Chamberlin beneficiaries the duty to repair the breach of trust. By reason of that unrepaired breach there existed at the time when Wiley was proceeding to make distribution to the beneficiaries the enforceable obligation to restore to the trust what he had wrongly taken in violation of his bond. *Newell* v. *Hadley*, 206 Mass. 335, 351. *First Taxing District* v. *National Surety Co.* 97 Conn. 639. *Hogan* v. *Cooney*, 51 R. I. 395. The obligation of Wiley, the principal in the bond, was also the obligation of the respondent surety company. *Blake* v. *Traders' National Bank*, 145 Mass. 13, 15. *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210, 214.

The question here is whether there was, at the time of the distribution to the Chamberlin beneficiaries in 1929, an existing obligation on the bond owed to those beneficiaries by Wiley and his surety by reason of his defalcations, rather than the method by which, or the forum where, they should properly proceed if compelled to act upon discovery of his misconduct. A probate accounting is not essential to

the existence of liability on a probate bond arising from the misuse of funds by a trustee. Such a liability is enforceable on the bond of a trustee although no accounting has been made. *Harmon* v. *Weston*, 215 Mass. 242, 246. *Fuller* v. *Dupont*, 183 Mass. 596. *Richardson* v. *Oakman*, 15 Gray, 57, 58. In *McKim* v. *Blake*, 132 Mass. 343, after a misappropriation of funds by a trustee which had not become known, the surety on the bond was discharged and a bond with new sureties given. The first surety, in an action on the bond brought years later, was held liable although, as appears from an examination of the original papers in the case, there was no probate account filed at the time of or after the discharge of the first surety.

The principle governing these decisions is not affected by the decisions in cases like *Green* v. *Gaskill*, 175 Mass. 265, and *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 254, which hold that if a trustee reasonably asserts and does not waive such right (*Allen* v. *Hunt*, 213 Mass. 276, 279) he is entitled to have his accounts settled on the probate side of the Probate Court before he can be required to make an accounting of the property of the estate in a proceeding brought on the equity side of that court. These cases did not preclude the trial judge from holding as he did that at the time of the distribution to the Chamberlin beneficiaries the prior thefts of Wiley, although they were unknown, had created a then existing liability for a breach of the condition of the bond requiring honesty and fidelity, a liability which the beneficiaries could assert upon discovery and establish by whatever procedure was proper.

The distribution made by Wiley as trustee did not terminate the liability of the surety on his bond. It is manifest that Wiley tendered, and the beneficiaries accepted, the property distributed as a performance *pro tanto* of the trustee's primary liability and not as a discharge of the collateral security of the bond. The effect on the surety was not the extinguishment of liability but the apparent reduction of any amount which the surety might be called on to pay in the event that Wiley did not perform the conditions of the bond. The property of the Hill trust

which was distributed in the Chamberlin estate appeared
as a credit to Wiley in his final account in that estate as it
was adjudicated some years later.   Without the use of the
Hill property that account could not have been settled and
the surety would have been called on to make good the
deficiency.   So far as the surety company was concerned the
use made of the Hill trust property was a reduction *pro
tanto* of the surety's potential obligation to the Chamberlin
beneficiaries.

Since the property of the Hill trust was, without its
volition, used to pay the obligation of Wiley and his surety
to the Chamberlin beneficiaries, equity should enforce that
obligation against Wiley and the surety for the benefit of
the Hill trust unless the result is prejudicial to the interest
of the Chamberlin beneficiaries.   The doctrine of subroga-
tion which rests "upon natural justice and equity" (*Amory
v. Lowell*, 1 Allen, 504, 507) is not to be applied if the result
is injury or prejudice to the person whose rights are sought
to be used by another.   The general rule is frequently
stated that a surety for the payment of the debt of another
has no right of subrogation until the claim for which he is
surety has been paid in full or otherwise entirely satisfied.
*Westinghouse Electric & Manuf. Co.* v. *Fidelity & Deposit
Co. of Maryland*, 251 Mass. 418, 420.   In the present case
there was no debt in the sense of an obligation to pay a
fixed sum of money or an amount calculable in advance.
The obligation here was the performance of the conditions of
the bond.   The question to be considered is whether a find-
ing was warranted that the subrogation of the petitioners
to the rights of the Chamberlin beneficiaries on the probate
bond would do injury or injustice to those beneficiaries.

The final account of Wiley as trustee under the Chamber-
lin will came on to be heard in 1933 on objections made by
the beneficiaries.   A credit of $61,780 was therein claimed
by Wiley for certain described bonds which had been stolen
from the Hill trust and distributed in 1929 to the Chamberlin
beneficiaries.   The probate judge who settled the account
found that the amount claimed was $6,092.50 in excess of
the market value of those bonds on the day they were dis-

tributed. He also found that the surety company had paid to the beneficiaries the sum of $3,500 and that they had accepted that sum in full accord and satisfaction of all their rights against the surety in respect of the delivery to them of the bonds described. The decree entered on the final account provided that the credits claimed by Wiley in the account should be reduced by the deduction of the amount of $6,092.50, that the beneficiaries, having received from the surety company the sum of $3,500, "now have no right to receive from said surety company anything on account of the bonds" and that the account as modified by the decree be allowed.

The final account as allowed showed a proper disposition of the principal and interest of the *res* with which the trustee was charged and an apparent termination of the trust. So far as respects the bonds described in the decree all rights of the beneficiaries against the surety were ended by their acceptance of $3,500 in full accord and satisfaction from the surety company and by the decree. The beneficiaries took no appeal from the decree. Nothing appears to indicate that they do not continue to be content with the final accounting made, or that they have sought to have the final account reopened for fraud or mistake or other ground. In the absence of such steps the decree stands as an accepted final determination of the rights of the beneficiaries against Wiley or his surety. We think the trial judge in the present case was warranted in finding that the application of the principle of subrogation would not result in injury or prejudice to the beneficiaries. The petitioners should not be denied the right of subrogation on the mere speculation that sometime something might be discovered which might lead the beneficiaries to assert a claim against the surety on the bond.

Before the allowance of the final account of Wiley as trustee of the Chamberlin trust the Hill trustees brought a petition having the same object as the present petition against the same respondents. The respondents' demurrer thereto was sustained. By the terms of the final decree that petition, however, was dismissed "without prejudice to the

right of the petitioners to bring another petition for the same cause . . . when it shall have been finally determined and the petitioners can allege" that the Chamberlin beneficiaries "have no claims against the respondents . . . by virtue of any breaches of trust in the said Chamberlin estate committed by the respondent Wiley as trustee of said estate, and that the full satisfaction of said claims has not exhausted or will not exhaust the liability" of the surety company, "up to the full limit of the penal sum of the bond given by said Wiley . . . ."

Although the final account of Wiley was adjudicated after the decree in the earlier case was entered and before the present petition was brought and any claims which the Chamberlin beneficiaries asserted at the time the hearing was had on the account were apparently fully satisfied and the satisfaction of such claims has not exhausted the liability of the surety company up to the penal sum of the bond, the surety company contends that it may in the future be called on to make further payments to the Chamberlin beneficiaries if further frauds of Wiley against the Chamberlin trust should be hereafter discovered.

On a reasonable interpretation of the language of the decree dismissing the earlier petition we think the conditions there prescribed were fulfilled. They were manifestly set to meet the requirement of the application of the doctrine of subrogation that prejudice or injury should not result to those to whose rights the petitioners sought to be subrogated. As earlier stated it could have been found that such would not here be the result. Nor would any rights of the surety be affected. The extent and the limit of its liability was the penal sum of the bond. Once having paid that amount its liability would cease.

The respondent surety company pleaded in its answer and here contends that the loss suffered by the Hill trust took place because of the negligence of the cotrustees of Wiley in the Hill trust and that therefore it is not equitable that the respondent surety company be held liable. The trial judge found that the cotrustees were lax in not inspecting and checking the securities at reasonable intervals.

"Assuming, without deciding, that the conduct of the petitioner cotrustees was negligent as a matter of law and that such negligence would be binding on the beneficiaries of the Hill trust" he found that "the conduct of the petitioner cotrustees had no causal relation to the wrongful conduct of . . . Wiley in embezzling property of the Chamberlin trust," and ruled in effect that their conduct did not bar them from the relief of subrogation. In this there was no error. The mere fact that one seeking subrogation was negligent does not prevent him from obtaining that relief. Negligence as to his own interests which does not affect prejudicially the interests of persons to whose rights he seeks to be subrogated does not bar him from subrogation. *Wall* v. *Mason*, 102 Mass. 313. *Worcester North Savings Institution* v. *Farwell*, 292 Mass. 568. The finding that there was no causal relation between any negligence of the cotrustees of the Hill trust and Wiley's embezzlement from the Chamberlin trust cannot be said to be wrong. Sheldon on Subrogation (2d ed.) § 34. Nor was negligence of the Hill cotrustees prejudicial to the surety company. The liability of the surety company existed before the theft from the Hill trust and negligence of the cotrustees did not contribute in any way to cause that liability. Stolen property of the Hill trust was used to pay what the surety company would otherwise have been required to pay to the beneficiaries of the Chamberlin trust. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 419. The principle that where one of two innocent persons must suffer a loss from the fraud of a third, the loss must be borne by him whose negligence enabled the third person to commit the fraud (*Allen* v. *South Boston Railroad,* 150 Mass. 200) is not applicable to the facts in this case. The "fraud" on which the petitioners base their petition is Wiley's embezzlement from the Chamberlin trust, not his theft from the Hill trust. Even if negligence of the Hill cotrustees played a causal part in the latter theft it was not a cause which entered into Wiley's embezzlement from the Chamberlin trust.

The petitioners have also appealed on the ground that

the final decree did not allow them interest on the amount awarded them from the date of the filing of their petition as damages for the detention of money owing after demand. The demand relied on is the filing of their petition. The demands expressed in the prayers of the petition were that the surety company pay to the petitioners the amount of the obligation of the surety company which was discharged by the use of the petitioners' property and that the surety company pay to the petitioners the full penal sum of the bond. At the time this petition was filed, a similar petition for subrogation against the same respondents had been filed on behalf of the Home for Aged Women. With the amount of the defalcations alleged in the two petitions not determined, with no adjudication that the requirements for the application of the doctrine of subrogation existed and with no ground appearing for preferring in payment these petitioners to the petitioners in the other pending case, we do not think that the filing of the petition in this case can be considered a demand, lack of compliance with which by the surety should penalize it by requiring the payment of interest on the amount eventually awarded.

The decree overruling the demurrer and the final decree were properly entered.

*Decrees affirmed.*